**Electronically Filed
Supreme Court
SCWC-14-0000842
08-JUN-2018
08:30 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

HAWAIIAN DREDGING CONSTRUCTION COMPANY, INC.,
Respondent/Plaintiff-Appellant,

vs.

FUJIKAWA ASSOCIATES, INC.,
dba Continental Mechanical of the Pacific,
Petitioner/Defendant-Appellee.

SCWC-14-0000842

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0000842; CIV. NO. 13-1-0900-03)

JUNE 8, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

This case arises from a worksite accident in which an employee of Hawaiian Dredging Construction Company, Inc. (HDCC) was injured, allegedly due to the actions of HDCC's subcontractor, Fujikawa Associates, Inc., dba Continental Mechanical of the Pacific (Fujikawa). After paying workers'

compensation benefits to its injured employee, HDCC sought

reimbursement from Fujikawa based on a breach of contract theory,

claiming that workers' compensation benefits were within the

scope of their subcontract's indemnity clause.  The circuit court

granted summary judgment in favor of Fujikawa based on its

interpretation of the subcontract's indemnity clause.

While we affirm the grant of summary judgment, we do so

based on our interpretation of Hawaiʻi Revised Statutes (HRS)

§ 386-8, which governs a third party's liability for workers'

compensation.  As set forth below, we conclude that this statute

provides the exclusive remedy for an employer to recover workers'

compensation benefits from a third-party tortfeasor.  Because

HDCC did not avail itself of that exclusive remedy, summary

judgment for Fujikawa was appropriate.

## I.  Background

**A.   The Subcontract and Accident**

HDCC hired Fujikawa to perform repairs to Edmonson Hall

at the University of Hawaiʻi at Mānoa.  On May 1, 2012, HDCC and

Fujikawa entered into a subcontract agreement (Subcontract).[1]

The Subcontract's indemnity clause provided:

---

[1]      The Subcontract was attached as an exhibit to a declaration of HDCC's counsel, which was provided in support of HDCC's motion for partial summary judgment in the circuit court.  The express language of the Subcontract is undisputed.

2

> **12.4** To the fullest extent permitted by law,
> Subcontractor shall indemnify, and save harmless
> Contractor and Owner, and their agents and employees,
> from and against all Liabilities on account of: . . .
> (B) the filing of any claims by persons or entities
> furnishing labor, materials, equipment or other
> services or facilities in connection with the Work;
> (C) any breach or default by Subcontractor of its
> obligations under this Agreement; or (D) any and all
> damage or injury to person or property arising
> directly or indirectly from the performance of the
> Work and/or the operations of Subcontractor to the
> extent any such damage or injury is attributable in
> whole or in part to the acts or omissions of
> Subcontractor, anyone directly or indirectly employed
> by Subcontractor or anyone for whose acts
> Subcontractor may be liable; and, when requested by
> Contractor, Subcontractor shall defend any and all
> actions and pay all charges of attorneys and other
> expenses arising therefrom.

The Subcontract defines "Liabilities" as: "Separately and collectively, any loss, injury, damage, fine, penalty, cost and expense (including legal fees and costs) and other liability whatsoever, and any action, suit, proceeding or claims, relating to such liability."

HDCC alleges that, in the course of performing repairs at the University of Hawaiʻi, HDCC employee Gabriel Balon was injured. HDCC sent Fujikawa a "Notice of Claim and Demand for Indemnification,"[2] which asserted the following:

> On June 26, 2012,[] one of HDCC's employees, Mr.
> Gabriel Balon, a 55-year old laborer, sustained
> injuries at the Project site when he was struck by a
> piece of an air duct being installed by [Fujikawa].
> As a result of this accident, Mr. Balon suffered a
> concussion and contusions of his back and leg, and has
> not returned to work. Moreover, he has filed a claim

---

[2] This notice was attached as an exhibit to a declaration of HDCC's counsel, which was provided in support of HDCC's motion for partial summary judgment in the circuit court. Fujikawa's receipt of this notice is undisputed.

3

> for indemnity and medical/rehabilitation benefits under Hawaii's Workers' Compensation Law, H.R.S. Chapter 386, and HDCC is currently making payments thereunder.

HDCC demanded that Fujikawa indemnify it "and its insurer(s) from and against any and all liability, costs and expenses . . . incurred in connection with the subject accident and the resolution thereof."

## B.   Circuit Court Proceedings[3]

HDCC subsequently filed a complaint in the circuit court.  HDCC alleged that Fujikawa breached the Subcontract by refusing to indemnify HDCC for the amounts it paid "on account of the bodily injury to Gabriel Balon."

Fujikawa filed an answer, denying that it caused Balon's injury and denying that it breached the Subcontract. Fujikawa asserted affirmative defenses related to comparative negligence, estoppel, unclean hands, failure to mitigate damages, waiver, and failure to join indispensable parties.

HDCC filed a motion for partial summary judgment, requesting judgment in its favor on the issue of Fujikawa's assumption of liability under the Subcontract for Balon's accident.  HDCC argued that summary judgment was appropriate because the "Subcontract 'clearly and unequivocally' assigns Fujikawa a responsibility to indemnify HDCC."

---

[3]   The Honorable Rhonda A. Nishimura presided.

4

Fujikawa opposed HDCC's motion, and requested the court to instead enter summary judgment in its favor. Fujikawa argued that workers' compensation benefits were outside the scope of the Subcontract's indemnity clause, and that summary judgment for HDCC would violate Fujikawa's due process rights and contravene public policy by "attempt[ing] to use an ambiguous, equivocal contractual indemnity to shift and evade [HDCC's] liability for compensation." Fujikawa also argued that HDCC's action "conflicts with the procedure for reimbursement mandated by the Legislature" in HRS § 386-8.

The circuit court held a hearing, and granted summary judgment in favor of Fujikawa based on its interpretation of the Subcontract. The circuit court found no clear and unequivocal assumption of liability to pay workers' compensation benefits for a work-related injury under the terms of the Subcontract. The court denied HDCC's motion for partial summary judgment and granted summary judgment in favor of Fujikawa. The court subsequently entered judgment in favor of Fujikawa.

C.    ICA Proceedings

HDCC timely appealed, arguing that the circuit court erred in failing to find Fujikawa liable for workers' compensation payments under the plain language of the Subcontract. HDCC contended that Hawai'i law allows "risks of

5

liabilities in construction" to be allocated by contract, and that such an allocation between contractor and subcontractor has no bearing on an injured worker's ability to secure workers' compensation benefits. HDCC argued that Fujikawa's broad promise in the Subcontract to indemnify HDCC for "Liabilities" attributable to Fujikawa should be interpreted to include workers' compensation costs, and that partial summary judgment should have been granted in its favor.

In its answering brief, Fujikawa characterized HDCC's appeal as an attempt to pass on its statutory workers' compensation obligations through a vague contractual term. Fujikawa argued that the circuit court correctly interpreted the Subcontract, as "HDCC's definition of 'Liabilities' did <u>not</u> include any reference to 'benefits,' statutory obligations, 'compensation,' disability payments or benefits – any term that would clearly and unequivocally indicate that Fujikawa agreed to indemnify HDCC for payments made for Gabriel Balon's workers' compensation benefits."

Fujikawa also argued that HDCC's claim attempted to avoid the process specified by HRS § 386-8[4] (1993) ("Liability

_____

[4]    HRS § 386-8 (1993) provided, in relevant part:

[1] When a work injury for which compensation is payable under this chapter has been sustained under circumstances creating in some person other than the

(continued...)

---

[4](...continued)
employer or another employee of the employer acting in the course of employment a legal liability to pay damages on account thereof, the injured employee or his dependents (hereinafter referred to collectively as the employee) may claim compensation under this chapter and recover damages from such third person.

[2] If the employee commences an action against such third person he shall without delay give the employer written notice of the action and the name and location of the court in which the action is brought by personal service or registered mail. The employer, at any time before trial on the facts, may join as party plaintiff.

[3] If within nine months after the date of the personal injury the employee has not commenced an action against such third person, the employer, having paid or being liable for compensation under this chapter, shall be subrogated to the rights of the injured employee. Except as limited by chapter 657, the employee may at any time commence an action or join in any action commenced by the employer against such third person.

[4] No release or settlement of any claim or action under this section is valid without the written consent of both employer and employee. The entire amount of the settlement after deductions for attorney's fees and costs as hereinafter provided, is subject to the employer's right of reimbursement for his compensation payments under this chapter and his expenses and costs of action.

[5] If the action is prosecuted by the employer alone, the employer shall be entitled to be paid from the proceeds received as a result of any judgment for damages, or settlement in case the action is compromised before judgment, the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee, which shall be based solely upon the services rendered by the employer's attorney in effecting recovery both for the benefit of the employer and the employee. After the payment of the expenses and attorney's fee, the employer shall apply out of the amount of the judgment or settlement proceeds an amount sufficient to reimburse the employer for the amount of his expenditure for compensation and shall pay any excess to the injured employee or other person entitled thereto.

(continued...)

[4](...continued)
    [6] If the action is prosecuted by the employee alone, the employee shall be entitled to apply out of the amount of the judgment for damages, or settlement in case the action is compromised before judgment, the reasonable litigation expenses incurred in preparation and prosecution of the action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the employer. After the payment of such expenses and attorney's fee, there shall be applied out of the amount of the judgment or settlement proceeds, the amount of the employer's expenditure for compensation, less his share of the expenses and attorney's fee. On application of the employer, the court shall allow as a first lien against the amount of the judgment for damages or settlement proceeds, the amount of the employer's expenditure for compensation, less his share of such expenses and attorney's fee.

    [7] If the action is prosecuted both by the employee and the employer, in a single action or in consolidated actions, and they are represented by the same agreed attorney or by separate attorneys, there shall first be paid from any judgment for damages recovered, or settlement proceeds in case the action or actions are settled before judgment, the reasonable litigation expenses incurred in preparation and prosecution of such action or actions, together with reasonable attorney's fees based solely on the services rendered for the benefit of both parties where they are represented by the same attorney, and where they are represented by separate attorneys, based solely upon the service rendered in each instance by the attorney in effecting recovery for the benefit of the party represented. After the payment of the expenses and attorneys' fees there shall be applied out of the amount of the judgment for damages, or settlement proceeds an amount sufficient to reimburse the employer for the amount of his expenditure for compensation and any excess shall be paid to the injured employee or other person entitled thereto.

    . . . .

    [10] The amount of compensation paid by the employer or the amount of compensation to which the injured employee is entitled shall not be admissible in evidence in any action brought to recover damages.

(continued...)

of third person"), which establishes the procedure by which an employer may seek to recover the workers' compensation payments that it made to its injured employee when a third party is allegedly liable for the employee's work-related injury. Fujikawa also argued that HDCC's request for damages conflicted with HRS § 386-8's provision that the "amount of [workers'] compensation paid by the employer . . . shall not be admissible in evidence in any action brought to recover damages."

The ICA vacated the circuit court's judgment, concluding that the Subcontract's indemnification clause encompassed workers' compensation benefits. The ICA held that "the Subcontract includes the clear and unequivocal agreement of Fujikawa to assume all Liabilities arising from its acts or omissions, including costs and expenses related to Balon's workers compensation claim." The ICA rejected Fujikawa's arguments that HDCC was attempting to evade its statutory workers' compensation obligations, relying on Iddings v. Mee-Lee, 82 Hawai'i 1, 16, 919 P.2d 263, 278 (1996), which held that contractual indemnification agreements "are valid in the workers' compensation context and do not contravene or undermine the purposes underlying workers' compensation in general."

---

[4](...continued)
. . . .

## II.  Standards of Review

### A.  Statutory Interpretation

"Statutory interpretation is a question of law reviewable de novo."  State v. Wheeler, 121 Hawaiʻi 383, 390, 219 P.3d 1170, 1177 (2009) (internal quotation marks omitted).  This court's construction of statutes is guided by the following rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself.  Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

Id. (quoting Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of the City & Cnty. of Honolulu, 114 Hawaiʻi 184, 193, 159 P.3d 143, 152 (2007)).

### B.  Summary Judgment

> [An appellate court] reviews the circuit court's grant of summary judgment de novo.  Price v. AIG Hawaiʻi Ins. Co., 107 Hawaiʻi 106, 110, 111 P.3d 1, 5 (2005).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  HRCP Rule 56(c).

Gillan v. Gov't Emps. Ins. Co., 119 Hawaiʻi 109, 114, 194 P.3d 1071, 1076 (2008).

10

### III. Discussion

**A. Introduction**

Fujikawa presents several questions challenging the ICA's ruling.[5] We focus on one question, as we find it determinative: whether an employer may recover workers' compensation payments under a contractual indemnification provision between the employer and the third-party tortfeasor who causes injury to the employee. We answer that question in the negative, since HRS § 386-8 provides employers an exclusive statutory reimbursement remedy under Hawaii's workers' compensation law (WCL).

Fujikawa argues that such an indemnity clause violates the WCL by shifting an employer's responsibility for workers' compensation to a subcontractor. In response, HDCC argues that "HRS § 386-8 neither requires an employer to assert its subrogation interests nor does it limit an employer to this statutorily-provided remedy." HDCC argues that it complied with Hawaii's WCL by accepting Balon's claim and providing Balon workers' compensation benefits, and that its claim for indemnity

---

[5] Fujikawa presents four questions to this court. Fujikawa's first two questions address whether the ICA misapplied contract law when it interpreted the Subcontract, and Fujikawa's remaining two questions address whether the ICA's ruling contravenes Hawaii's workers' compensation scheme and public policy encouraging settlement of an injured workers' claim, which we construe as a single related question. In light of our disposition of this case, we need not address Fujikawa's contractual interpretation questions.

"is based on an independent duty created by the indemnification provision in the Subcontract."

Fujikawa filed a Reply to HDCC's Response, arguing that Yukumoto v. Tawarahara, 140 Hawai'i 285, 400 P.3d 486 (2017) supports its position. In Yukumoto, we held that a health insurer's contractual provision granting a right of subrogation against third-party torteasors was invalid because it conflicted with statutes that provided a health insurer's exclusive right of subrogation. Yukumoto, 140 Hawai'i at 299, 400 P.3d at 500 (citing HRS §§ 663-10 (Supp. 2002) and 431-13:103(a)(10) (Supp. 2002)). Fujikawa asserts that HDCC's position similarly "would jeopardize the comprehensive and exclusive workers' compensation scheme established by the legislature."

We conclude that the comprehensive workers' compensation reimbursement scheme established by HRS § 386-8 provides the exclusive remedy for an employer's recovery of workers' compensation benefits paid for its employee where injury is allegedly attributable to a third party. Thus, any contractual provision that conflicts with this statutory remedy is invalid. HDCC is therefore not entitled to contractual indemnity for workers' compensation payments made as a result of Balon's injury, and summary judgment in favor of Fujikawa was proper. Although the circuit court erroneously granted

12

Fujikawa's cross-motion for summary judgment based on its interpretation of the Subcontract, we affirm the circuit court's judgment based on our interpretation of HRS § 386-8. See Reyes v. Kuboyama, 76 Hawai'i 137, 140, 870 P.2d 1281, 1284 (1994) ("This court may affirm a grant of summary judgment on any ground appearing in the record, even if the circuit court did not rely on it.").

**B.  Statutory Interpretation of HRS § 386-8**

Whether HRS § 386-8 provides the exclusive remedy for an employer's reimbursement of workers' compensation benefits paid for its employee due to the fault of a third party is a question of first impression before this court.  When construing a statute, our foremost obligation is to "give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose."  Morgan v. Planning Dep't, Cnty. of Kauai, 104 Hawai'i 173, 179-80, 86 P.3d 982, 988-89 (2004) (citation omitted).  As set forth below, the language, legislative history, and purpose of the statutory framework governing workers' compensation lead us to conclude that the legislature intended to limit an employer's right of

recovery for workers' compensation payments to the manner prescribed by HRS § 386-8.

### 1. The Plain Language and Legislative History of HRS § 386-8

The plain language and legislative history of HRS § 386-8 show that the legislature has created a uniform and comprehensive procedure for the recovery of workers' compensation benefits paid as a result of a third party's tortious conduct. The comprehensive nature of this statutory scheme supports the conclusion that the legislature intended HRS § 386-8 to provide the employer's exclusive remedy in these circumstances.

Under the first paragraph of HRS § 386-8, when an employee has sustained a work-related injury due to a third party, the injured employee "may claim compensation under this chapter and recover damages from such third person."  The second paragraph of HRS § 386-8 provides that "[i]f the employee commences an action against such third person, the employee shall without delay give the employer written notice of the action." As such, "[u]nder HRS § 386-8, the employee has the first opportunity to bring suit, which promotes the efficient resolution of his or her claims." First Ins. Co. of Hawaii v. A&B Properties, 126 Hawai'i 406, 418, 271 P.3d 1165, 1177 (2012). The third paragraph of HRS § 386-8 provides that "[i]f within nine months after the date of the personal injury the employee

has not commenced an action against such third person, the employer, having paid or being liable for compensation under this chapter, <u>shall</u> be subrogated to the rights of the injured employee." (Emphasis added). The fourth paragraph of HRS § 386-8 ensures that both the employee and employer have an opportunity to protect their interests by providing that "[n]o release or settlement of any claim or action under this section is valid without the written consent of both employer and employee."

Paragraphs five, six, and seven of HRS § 386-8 list the types of actions that may be brought against a third party, explain how litigation expenses and attorney's fees are apportioned, and specify how an employer may recover its workers' compensation payments under each action. Whether the action against the third party is commenced by the employer alone, by the employee alone, or by both the employee and employer, the employer <u>shall</u> be reimbursed for the amount of its expenditure for workers' compensation from the judgment for damages or from the amount of settlement. HRS § 386-8.

Accordingly, "HRS § 386–8 establishes a framework for the employee, employer, and third party to attempt to resolve their dispute at one time and in a single proceeding." <u>First Ins. Co.</u>, 126 Hawai'i at 418, 271 P.3d at 1177. The

15

comprehensive scope of HRS § 386-8, by detailing specific methods for compensation reimbursement, suggests that the legislature's intent was to provide an exclusive method for recovering workers' compensation payments from a third party.

Consistent with this plain language interpretation, the legislative history of HRS § 386-8 supports the conclusion that an employer's exclusive right to reimbursement is provided for in the statute. HRS § 386-8 can be traced to Hawaii's first Workers' Compensation Act, which was enacted in 1915.[6] 1915 Haw. Sess. Laws Act 221, § 5 at 324. However, the original version was quite different from the current provision. Indeed, from the time of its initial enactment, the statute has been progressively amended, with each successive amendment providing a more comprehensive framework. Prior to 1951, an injured employee was

---

[6]    In 1915, Act 221, § 5, "Liability of Third Persons," provided:

> When any injury for which compensation is payable under this Act shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim compensation under this Act or obtain damages from or proceed at law against such other person to recover damages; and if compensation is claimed and awarded under this Act any employer having paid the compensation or having become liable therefor shall be subrogated to the rights of the injured employee to recover against that person, provided, if the employer shall recover from such other person damages in excess of the compensation already paid or awarded to be paid under this Act, then any such excess shall be paid o the injured employee less the employer's expenses and costs of action.

required to "elect whether to claim compensation [from his employer] or claim his damages [from the third-party tortfeasor], and if he claims one, he loses the other." H. Stand. Comm. Rep. No. 722, in 1951 House Journal, at 579. In 1951, the legislature amended the statute to allow the employee to claim workers' compensation benefits and proceed against a third person without waiving his rights to either. 1951 Haw. Sess. Laws Act 194, § 1 at 229; S. Stand. Comm. Rep. No. 195, in 1951 Senate Journal, at 589. However, the amendment provided that if the employee recovered damages from the tort suit, the employer would have the right to reimbursement out of those damages for the workers' compensation benefits it paid. 1951 Haw. Sess. Laws Act 194, § 1 at 229-30; S. Stand. Comm. Rep. No. 195, in 1951 Senate Journal, at 589.

Subsequent legislative amendments provided additional detail regarding the employer's rights and remedies, including procedures for an employer's recovery of workers' compensation benefits, litigation expenses, and attorney's fees in suits against third-party tortfeasors. In 1967, the legislature amended the WCL "to provide a method for fixing and paying reasonable litigation expenses and attorney's fees in third party actions and for the apportionment of such expenses and fees." S. Stand. Comm. Rep. No. 163, in 1967 Senate Journal, at 904; 1967

Haw. Sess. Laws Act 53, § 1 at 39-40. In 1970, the legislature amended the WCL to provide for litigation costs and attorney's fees where a third-party claim results in settlement. 1970 Haw. Sess. Laws Act 58, § 1 at 106-07; H. Stand. Comm. Rep. No. 638-70, in 1970 House Journal, at 1111. In 1973, the legislature amended the WCL to "require an employer or his insurance carrier to pay a proportionate share of the attorney's fees and costs on sums recovered by an injured employee from a third party which are reimbursable to the employer or his carrier." H. Stand. Comm. Rep. No. 375, in 1973 House Journal, at 911; 1973 Haw. Sess. Laws Act 144, § 1 at 225-26.

In sum, the history of the statute reflects the legislature's intent to address an ever-wider range of scenarios, and to provide a clear set of rules for each to ensure that both the employer and the employee are treated fairly. It would be inconsistent with that carefully crafted scheme to allow the employer to unilaterally vary those rules through agreements with its subcontractors. By providing a specific reimbursement remedy and continuing to provide further specificity to the contours of that remedy, the legislature intended to exclude other forms of remedy for an employer's payment of workers' compensation benefits. Accordingly, the legislative history suggests that the comprehensive workers' compensation scheme is the whole source of

rights and remedies for third-party tortfeasor actions under the WCL.

This conclusion is supported by our interpretation of statutes governing reimbursement and subrogation rights in the health insurance context.  See Yukumoto v. Tawarahara, 140 Hawaiʻi 285, 400 P.3d 486 (2017).  In Yukumoto, the Hawaiʻi Medical Service Association (HMSA) argued that it was not limited to the statutory procedure for reimbursement of the amounts it paid for medical expenses associated with Yukumoto's injuries in an accident, but could recover those amounts through independent contractual rights.  Id. at 288, 400 P.3d at 489.  Based on the plain language and legislative history of the statutes at issue, we held that the legislature had created a uniform and comprehensive procedure for lienholders' reimbursement and subrogation recovery.  Id. at 294-98, 400 P.3d at 495-99.  Accordingly, any contractual provision in conflict with the statutory procedure was invalid, and HMSA could not recover its medical expense payments through contract instead of following the procedure prescribed by the legislature.  Id. at 299, 400 P.3d at 500; see also Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding that the specificity and comprehensiveness of the remedies provided by Title II of the Americans with Disabilities Act suggested that Congress intended that remedial

19

scheme to be the exclusive means by which a party could vindicate his rights, and therefore plaintiff's § 1983 claims were barred).

Similarly here, HRS § 386-8 sets forth a comprehensive scheme which reflects an intent to establish uniform and exclusive remedies. Accordingly, the plain language and legislative history of HRS § 386-8 support the conclusion that HDCC's manner of compensation reimbursement is exclusively provided for in the statute.

## 2.    The Purpose of Workers' Compensation Law

Our conclusion that the plain language and legislative history of HRS § 386-8 provides an employer's exclusive remedy for reimbursement is also consistent with the purpose of WCL. In Estate of Coates v. Pac. Engineering, a Div. of Pac. Lining Co., Inc., 71 Haw. 358, 364, 791 P.2d 1257, 1261 (1990), we noted that WCL is "designed to obtain for the injured workman or his dependents an assured, certain and prompt compensation to replace the doubtful right accorded by common law, and to secure for the employer freedom from vexatious, delaying and uncertain litigation with its possibilities of heavy penalties in the way of verdicts and high costs."

In accord with this purpose, we have said that HRS § 386-8 establishes a framework for dispute resolution "at one time and in a single proceeding," thereby promoting the efficient

20

resolution of an employee's claims.  First Ins. Co., 126 Hawai'i at 418, 271 P.3d at 1177.  In First Ins. Co., we considered the narrow question of whether an employee can intervene in his or her employer's timely lawsuit against a third party after the two-year limitations period established by HRS § 657-7 (1993) has passed.  Id. at 408, 271 P.3d at 1167.  We construed HRS § 386-8 consistent with WCL's purpose of facilitating a fair and prompt resolution, noting that HRS § 386-8 requires written consent by both the employee and employer to a settlement or release of claims in order to provide an opportunity for each party to protect their respective interests.  Id. at 418, 271 P.3d at 1177.  Because it would be inconsistent to allow an injured employee to object to a proposed settlement of claim but not intervene in an employer's suit to resolve that claim, we held that "the structure of the workers' compensation statute, which encourages resolution of the dispute in a single action, suggests an intent to allow intervention by both the employer and the employee at any time prior to trial in the other's timely filed suit."  Id.  Thus, while First Ins. Co. did not directly answer the question here, it held that HRS § 386-8 should be construed in order to accomplish the purpose of encouraging resolution of disputes in a single action.  Id.

Interpreting HRS § 386-8 as providing an exclusive remedy is consistent with WCL's purpose because it "encourages resolution of the dispute in a single action" and discourages "vexatious, delaying and uncertain litigation" through contract-based actions to recover workers' compensation payments. Id.; Estate of Coates, 71 Haw. at 364, 791 P.2d at 1261. Such actions conflict with the statute's goal of efficiently resolving an injured employee's claims in a single proceeding and assuring prompt compensation for the injured employee.[7]

Accordingly, based on the statute's plain language, legislative history, and purpose, we conclude that HRS § 386-8 provides HDCC's exclusive remedy for reimbursement of workers' compensation payments.

## C.    Application to this Case

In light of our conclusion that HRS § 386-8 provides an employer's exclusive remedy for reimbursement of workers' compensation payments, HDCC's breach of contract claim fails. Even if the parties intended the Subcontract's indemnity clause to encompass workers' compensation payments, that agreement would

---

[7]    Furthermore, permitting an employer to require its subcontractor to indemnify it for workers' compensation benefits could raise significant public policy concerns. For example, allowing this contractual shifting of responsibilities could discourage an employer from providing a safe work environment for its employees, because an accident to which a subcontractor is only marginally attributable could still fall within the scope of the indemnity clause.

be invalid.  An employer cannot contractually require a third-party tortfeasor to indemnify it for workers' compensation payments.  Rather, the employer must follow the procedure provided by HRS § 386-8.  Therefore, summary judgment in favor of Fujikawa was proper.

Respectfully, we disagree with the ICA's conclusion that Iddings, 82 Hawai'i 1, 919 P.2d 263, supports a contrary result.  The ICA determined that contractual indemnification agreements are valid in the workers' compensation context and do not undermine the purposes of WCL, quoting Iddings, 82 Hawai'i at 8, 919 P.2d at 270.  The ICA then interpreted the Subcontract, and concluded that the Subcontract's indemnity clause encompassed expenses stemming from workers' compensation benefits.  Iddings, however, is distinguishable.

In Iddings, the plaintiff nurse was injured while subduing a violent patient.  Id. at 4, 919 P.2d at 266.  The nurse applied for, and received, workers' compensation benefits from her employer, the hospital.  Id.  The nurse brought a separate action in tort against her supervisory co-employee, physician Mee-Lee, contending that Mee-Lee, by allowing the hospital to become overcrowded, acted wilfully and wantonly in creating an unsafe work environment.  Id.  The circuit court granted Mee-Lee's motion for summary judgment, finding that:  (1)

23

an actual intent to injure is required for a co-employee's conduct to satisfy the "wilful and wanton misconduct" exception to co-employee immunity; and (2) the nurse's contention that Mee-Lee intentionally allowed her to work in an unsafe working environment did not constitute willful and wanton misconduct. Id. at 5, 919 P.2d at 267.

We vacated and remanded, holding that an actual intent to injure is not required in order for the injury-causing conduct of a co-employee to fall within the scope of the wilful and wanton misconduct exception, and that there were genuine issues of material fact as to whether Mee-Lee engaged in willful and wanton misconduct. Id. at 4, 919 P.2d at 266.

We discussed contractual indemnity agreements only in the context of responding to the dissent. Id. at 15-17, 919 P.2d at 277-79. The dissent contended that allowing tort claims against supervisory co-employees would create an absurd result, since the employer would provide benefits to the injured employee through workers' compensation, and, at the same time, indemnity coverage to the supervisory employee. Id. at 28 n. 11, 919 P.2d at 290 n. 11 (Ramil, J., dissenting). The dissent argued that a typical situation where this absurd result would occur is the following: (1) the employee would seek workers' compensation benefits, and damages from the supervisory employee tortfeasor;

24

(2) the supervisor would then seek indemnity from its employer; (3) and the employer would then seek reimbursement for its workers' compensation benefits from the injured employee's recovery against the supervisor. Id.; see also id. at 17, 919 P.2d at 279 (Ramil, J., dissenting).

The majority responded that it failed to see the absurdity of this result. Id. at 17, 919 P.2d at 279. We stated that it is "well settled that contractual indemnification agreements and 'hold harmless' clauses are valid in the workers' compensation context and do not contravene or undermine the purposes underlying workers' compensation in general." Id. at 16, 919 P.2d at 278. This statement related to a third-party tortfeasor's right to seek indemnity from an employer based on an indemnity agreement. See id. We relied on previous cases: Kamali v. Hawaiian Elec. Co., Inc., 54 Haw. 153, 504 P.2d 861 (1972), Messier v. Ass'n of Apartment Owners of Mt. Terrace, 6 Haw. App. 525, 735 P.2d 939 (1987), and Keawe v. Hawaiian Elec. Co., Inc., 65 Haw. 232, 649 P.2d 1149 (1982), which all held that a third-party tortfeasor may seek indemnification from an employer based on a contractual indemnity agreement. Iddings, 82 Hawai'i at 17, 919 P.2d at 279. We stated that just as any other third-party tortfeasor may seek indemnity from an employer for the tort damages it paid to the injured employee, a co-employee

25

liable in tort to the injured employee may seek indemnification from his or her employer.  Id.  Finally, we stated that the dissent's third proposition "simply reiterates the employer's right of reimbursement for workers' compensation benefits paid out by the employer mandated by HRS § 386-8."  Id.

Thus, the reference to indemnity agreements in Iddings involved only agreements in which a third party seeks indemnification from the employer for damages the third party has paid to an injured employee.  See id. at 15-17, 919 P.2d at 277-79.  Iddings, and the earlier cases on which it relied, did not address the wholly separate issue of whether an employer may circumvent the statutory procedure provided in HRS § 386-8 by using an indemnity agreement to recover workers' compensation benefits from a third-party tortfeasor.[8]

In fact, Iddings stated that an employer, after indemnifying a third-party tortfeasor, could seek reimbursement for workers' compensation benefits from the employee through the statutory procedure mandated by HRS § 386-8.  Id. at 17, 919 P.2d at 279.  Thus, Iddings did not contemplate an employer using an

---

[8]    We also note that, although not at issue here, any agreement in a construction contract requiring the promisor to indemnify or defend "the promisee against liability for bodily injury to persons or damage to property caused by or resulting from the sole negligence or wilful misconduct of the promisee, the promisee's agents or employees, or indemnitee, is invalid as against public policy, and is void and unenforceable."  HRS § 431:10-222; Arthur v. State, Dept. of Hawaiian Home Lands, 138 Hawaiʻi 85, 93-95, 377 P.3d 26, 34-36 (2016).

indemnification agreement to recover workers' compensation benefits from a third-party tortfeasor.

An agreement by an employer to indemnify a potential third-party tortfeasor for tort damages does not implicate the policies of WCL, because it does not alter the procedure by which employers provide or receive reimbursement for workers' compensation benefits. In contrast, the indemnity agreement here attempted to supplant the procedure mandated by HRS § 386-8.

Accordingly, the ICA erred when it relied on <u>Iddings</u> to conclude that the Subcontract's indemnity provision was valid.

### IV. Conclusion

For the foregoing reasons, we conclude that HRS § 386-8 provides the exclusive remedy for an employer seeking reimbursement for workers' compensation benefits from a third-party tortfeasor, and accordingly, that summary judgment in favor of Fujikawa was proper. We therefore vacate the ICA's March 29, 2017 Judgment on Appeal, and affirm the circuit court's May 2, 2014 Judgment.

Sheree Kon-Herrera
for petitioner

James Shin (Jodie D. Roeca on the briefs)
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

