*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

**Electronically Filed
Supreme Court
SCRQ-22-0000716
05-FEB-2024
08:17 AM
Dkt. 46 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

HYUN JU PARK, Plaintiff,

and

DONGBU INSURANCE CO., LTD., Plaintiff-Intervenor-Appellant,

vs.

CITY AND COUNTY OF HONOLULU, Defendant-Appellee,

and

STERLING NAKI and JOSHUA OMOSO, Defendants.

SCRQ-22-0000716

RESERVED QUESTION FROM THE CIRCUIT COURT
OF THE FIRST CIRCUIT, STATE OF HAWAI'I
(CASE NO. 1CC181001374)

FEBRUARY 5, 2024

RECKTENWALD, C.J., McKENNA, EDDINS, JJ.,
CIRCUIT JUDGE KIM AND CIRCUIT JUDGE WATANABE,
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY EDDINS, J.

**I.**

This court accepted the Circuit Court of the First Circuit's reserved question:

> Does a subrogee insurance company, which timely intervened pursuant to HRS § 386-8(b), have an independent right to continue to pursue claims and/or legal theories against a tortfeasor that were not asserted by the subrogor employee, after summary judgment has been granted against the subrogor employee, on the subrogor employee's claims?

We answer Yes.

There are three main reasons. First, an affirmative answer protects subrogation, which in turn protects indemnity. Second, a Yes answer aligns with Hawai'i's workers' compensation subrogation law, Hawai'i Revised Statutes (HRS) § 386-8 (2015 & Supp. 2016). Third, a No answer undermines employers' and insurers' intervention rights.

We also address a claim preclusion argument. It does not alter our answer.

**II.**

The subrogee insurance company is Plaintiff-Intervenor Dongbu Insurance Co., Ltd. (Dongbu). The subrogor employee is Plaintiff Hyun Ju Park (Park). The alleged third-party tortfeasor is the City and County of Honolulu (the City).

Park sued the City. Dongbu intervened. The City moved to dismiss all of Park's claims and some Dongbu claims. The circuit court granted the motions. Two Dongbu claims remained. The circuit court's reserved question asks whether intervenor

2

Dongbu may pursue its non-dismissed claims as a subrogee against the City.

We detail the factual backdrop and procedural history.

Park worked as a bartender at Kings Sports Bar & Grill in Honolulu.  In April 2015, three off-duty Honolulu Police Department (HPD) officers went to that bar.  One officer had several drinks and unholstered his HPD-authorized firearm.  He tried to load it.  But he couldn't – the gun was already loaded.  The other HPD officers watched but did nothing.  While Park worked, the officer shot her.  She nearly died.

Park sued the City and County of Honolulu and the officers in the United States District Court for the District of Hawai'i.  Under 42 United States Code § 1983, Park alleged the City violated her Fourth and Fourteenth Amendment rights.  She also asserted state tort law claims.

Dongbu was Kings Sports Bar & Grill's workers' compensation insurance carrier.  Dongbu successfully moved to intervene in the federal suit.  Later, the City moved to dismiss for failure to state a claim.  In August 2018, the federal district court agreed.  It dismissed Park's federal claims with prejudice. Park v. City & Cnty. of Honolulu, No. CV 17-00142 ACK-KSC, 2018 WL 3764084, at *16 (D. Haw. Aug. 8, 2018).  Park failed to allege "intentional governmental action meant to interfere" with her bodily integrity or that the officers "acted under color of

3

state law." Id. at *9, *10. The court declined to rule on the state law claims. Id. at *16. Park appealed to the Ninth Circuit Court of Appeals.

The next month, September 2018, Park filed a complaint in the Circuit Court of the First Circuit. She alleged two claims, negligence and negligent infliction of emotional distress. Park said the City was negligent in two ways: (1) An HPD policy in her view directed officers to possess guns while drinking alcohol, and (2) HPD lacked a whistleblowing policy requiring officers to report misconduct. The circuit court stayed the proceedings until the court of appeals ruled.

The Ninth Circuit affirmed the district court's dismissal of Park's claims in March 2020. Park v. City & Cnty. of Honolulu, 952 F.3d 1136 (9th Cir. 2020). Park failed to plausibly argue that through its policies, "the County's inaction reflected deliberate indifference to her Fourteenth Amendment right to bodily integrity." Id. at 1141-42. The court disagreed with Park that HPD policy could reasonably be interpreted as requiring police officers to carry guns while intoxicated. Quite the opposite. "[T]he policy's explicit purpose was to *prohibit* officers from carrying firearms while in an impaired condition." Id. at 1142. The Ninth Circuit did not touch Park's state law claims.

In March 2021, per HRS § 386-8, Dongbu intervened in the circuit court proceeding. Dongbu alleged four counts against the City: (1) negligence, (2) respondeat superior, (3) negligent supervision, and (4) subrogation. Dongbu repeated Park's theories that the City was negligent for its possession-of-firearms-while-intoxicated policy and not having a mandatory misconduct reporting policy.

On its own, Dongbu alleged more. First, the City negligently trained the shooting officer on the safe handling of firearms. Second, the City negligently failed to supervise the officer and limit his access to weapons.

Because it paid $1.1 million in workers' compensation for Park, Dongbu also claimed subrogation. Dongbu maintained that it has the right to recover workers' compensation payments it made for Park.

In July 2021, the circuit court granted the City's motion for summary judgment against Park. It also granted partial dismissal or partial summary judgment against Dongbu. The court dismissed Dongbu's first two claims: negligence and respondeat superior. But not Dongbu's other claims, negligent supervision and negligent training.

In August 2021, the City answered Dongbu's complaint. The next month it moved for summary judgment. The City argued that Dongbu's negligent supervision claim failed to show the City had

notice that the officer needed supervision.  Also, the City briefly mentioned that because Park was no longer in the case and Dongbu's claims rested on the validity of her claims, Dongbu's subrogation claim failed.

The City withdrew its motion in March 2022.  About a week later, the City again moved for summary judgment.  The City revamped its argument.  It relied on its subrogation theory.  That is, Dongbu's claims failed because the court dismissed Park from the case on the merits.

In August 2022, the court denied the City's MSJ against Dongbu.

In September 2022, the City moved per Hawai'i Rules of Appellate Procedure Rule 15(a) to reserve a question to this court.  It also moved to stay the proceedings.  Dongbu opposed the City's requests.  Park filed no response.  The circuit court granted the motion, but denied the stay.

## III.

> Does a subrogee insurance company [Dongbu], which timely intervened pursuant to HRS § 386-8(b), have an independent right to continue to pursue claims and/or legal theories against a tortfeasor that were not asserted by the subrogor employee [Park], after summary judgment has been granted against [Park], on [Park]'s claims?

Yes.  So Dongbu may continue to pursue its non-dismissed claims.

With subrogation, a subrogee (Dongbu) substitutes for a subrogor (Park), the original holder of a right.  "[S]ubrogation

6

involves 'stepping into' the shoes of another, when an insurer brings an action against a tortfeasor based upon its subrogation rights, the insurer's rights flow from the insured's rights." State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Hawai'i 315, 329, 978 P.2d 753, 767 (1999).

The parties disagree on what stepping into another's shoes means.

The City believes stepping into Park's shoes means that the dismissal of her claims dooms Dongbu's case. In its view, Dongbu's rights flow solely from Park's lawsuit. Because the court dismissed Park's suit, Dongbu cannot pursue its claims as a subrogee. The City urges a No answer.

We answer Yes. An employer or insurer, standing in an employee's shoes, may continue litigating its independent claim if the employee could have raised that claim.

First, answering Yes better protects subrogation, and by extension indemnity. Dongbu's subrogation interest is not only valid, it's vital to Hawai'i's workers' compensation law. "A substantial part of the legislative purpose and intent of a [workers' compensation] statute is to provide for subrogation and prevent double recovery." Moranz v. Harbor Mall, LLC, 150 Hawai'i 387, 400, 502 P.3d 488, 501 (2022) (citation omitted).

Second, a Yes answer aligns with HRS § 386-8. Under that law, a subrogee insurance company like Dongbu has the ability to

intervene to protect its lien interest against the tortfeasor.
See HRS § 386-8(b) ("The employer, at any time before trial on
the facts, may join as party plaintiff.").

Third, answering No would impair an employer or insurer's
ability to intervene.  Its claims could only be as good as the
employee's.  If an employee failed to survive a motion to
dismiss, a court would have to dismiss an *employer's* complaint –
even a strong one.  This approach may dissuade employers from
intervening in employees' lawsuits.  That outcome weakens HRS
§ 386-8's right to intervene and seek reimbursement.  And it may
allow wrongdoers to elude liability.

**A.**

Subrogation aids indemnity.  State Farm, 90 Hawaiʻi at 328,
978 P.2d at 766.  It allows insurers to recover what they pay
when third parties injure their insureds.  Id.  It prevents an
insured from getting two recoveries: one from the insurer, one
from the tortfeasor.  Moranz, 150 Hawaiʻi at 400, 502 P.3d at
501.

The insurer's subrogation right balances the insured's
recovery right.  The insurer, "who, in a fault sense, is
neutral, comes out even;" the tortfeasor "pays exactly the
damages it would ordinarily pay;" and the employee "gets a
fuller reimbursement for actual damages sustained than is

possible under the compensation system alone." Id. (cleaned up).

Subrogation is an insurer's remedy for torts against its insureds. It is "both a legal right and a legal action." State Farm, 90 Hawai'i at 328, 978 P.2d at 766 (citation omitted). It is not automatic. See id. at 333, 978 P.2d at 771. But once invoked, the subrogee "is put in all respects in the place of the party to whose rights [it] is subrogated." Id. at 331, 978 P.2d at 769. Here, Dongbu steps into Park's shoes. Its rights flow from her rights. Id. at 329, 978 P.2d at 767.

An intervening insurer slides into comfortable shoes, not shoddy shoes. It's not forced to wear a dismissed plaintiff's shoes. It may walk within the limits of the employee's available rights. And it does so at the outset of the litigation. A workers' compensation insurer may raise and litigate any claim an employee was entitled to raise at the outset.

Dongbu seeks redress for Park's injury. Payback for what it paid out. Dongbu may do more than piggyback on Park's claims. It may enforce all rights available to Park.

The City insists that State Farm supports its position. An insurer may "enforce only such rights as the insured . . . has against the party whose wrong caused the loss." State Farm, 90 Hawai'i at 329, 978 P.2d at 767 (cleaned up). Those rights, this

court said, "flow from the insured's rights" and "are derivative" because they "rest upon the viability of the insured's claim against the tortfeasor." Id. The City believes this language means Dongbu's claims are *always* tied to Park's. Once her claims are dismissed, Dongbu's are too. The City is wrong.

State Farm merely stressed that an insurer may only bring claims the insured could bring. Here, Dongbu's claims "rest upon the viability" of Park's. If Park cannot advance any winning claims against the City, then neither can Dongbu.

Dongbu's pursuit of its claims does not harm Park. As a subrogee, an insurer is entitled to only what will make it "come[] out even." Moranz, 150 Hawai'i at 400, 502 P.3d at 501. If Dongbu prevails against the City, it pays Park "any excess" that it recovers. See HRS § 386-8(e), § 386-8(g) (setting priority order for distribution of damages).

No matter how the City's liability gets litigated, the distribution follows HRS § 386-8's formula. Park receives any excess. It doesn't matter if she wins, Dongbu wins, or they both win together. See HRS § 386-8(e)-(g). And even if Park wins without Dongbu's intervention, Dongbu is still entitled to recover workers' compensation payments from Park's "judgment or settlement proceeds." See HRS § 386-8(f).

10

**B.**

HRS § 386-8 also supports a Yes answer.  The statute offers the employer or workers' compensation insurer the ability to independently protect its subrogation interest. (HRS § 386-8 uses "employer" to refer to the employer or the employer's workers' compensation insurance carrier, and we follow that practice).

"HRS § 386-8 provides the exclusive remedy for an employer seeking reimbursement for workers' compensation benefits from a third-party tortfeasor."  Hawaiian Dredging Constr. Co., Inc. v. Fujikawa Assocs., Inc., 142 Hawai'i 429, 439, 420 P.3d 360, 370 (2018).  Because Dongbu paid for Park's injuries through workers' compensation benefits, HRS § 386-8 authorizes it to seek reimbursement.

HRS § 386-8 empowers an employer to sue a third-party tortfeasor.  Once an employee sues, the employer may "join as [a] party plaintiff."  HRS § 386-8(b).  Once joined, HRS § 386-8 does not bind the employer to the confines of the employee's complaint.  The employer has the same rights as a party.  Like any plaintiff, it may advance claims.  Here, Dongbu joined "as [a] party plaintiff" under HRS § 386-8(b) to protect its interests in subrogation and reimbursement.  It may bring its own claims.

HRS § 386-8 also allows an employer to sue *without* the employee. If Park had not filed suit "within nine months after the date of the personal injury," Dongbu could have sued on its own. HRS § 386-8(c). Park, as the employee, could join that suit, file her own action, or sit out the litigation. Id. If the employee sits out, the employer may go it alone. HRS § 386-8(e) anticipates actions "prosecuted by the employer alone" and details how judgments or settlements should be divided between employer and employee.

Thus, we do not think the legislature intended for an employer to passively rely on an employee to propel litigation. The legislature gave employers the right to bring their own claims. HRS § 386-8(e) says nothing about ending an employer's case when an employee's case ends.

Next, HRS § 386-8 protects employers' subrogation interest in settlement negotiations. HRS § 386-8(d) reads: "No release or settlement of any claim or action under this section is valid without the written consent of both employer and employee." It "ensures that both the employee and employer have an opportunity to protect their interests." Hawaiian Dredging, 142 Hawai'i at 435, 420 P.3d at 366.

We also believe the legislature did not intend to tie an employer to an injured employee. Rather, it gave the employer its own opportunity to shape the outcome. See Shimabuku v.

12

Montgomery Elevator Co., 79 Hawai'i 352, 358, 903 P.2d 48, 53 (1995) ("[B]ecause the employer's right to reimbursement is often dependent on the injured employee's actions, the legislature imposed a provision requiring the written consent of both employer and employee before any release or settlement is valid").

Last, HRS § 386-8 understands that employers and employees can pursue separate legal strategies. They may bring either "a single action or . . . consolidated actions," and be "represented by the same agreed attorney or by separate attorneys." HRS § 386-8(g). An employer is not just a bystander.

Nowhere does HRS § 386-8 indicate that an employer's claims must match an employee's claims, or must be dismissed if an employee is dismissed. An intervening employer, as "party plaintiff," may pursue its own claims.

## c.

The policies behind intervention inform our Yes answer. A No answer undermines intervention, weakens recovery, and disincentivizes insurers from intervening.

Dismissing Dongbu subverts intervention's aims. One HRS § 386-8 purpose is to facilitate a complete resolution of the dispute. First Ins. Co. of Hawaii, Ltd. v. A&B Props., Inc., 126 Hawai'i 406, 418, 271 P.3d 1165, 1177 (2012). An insurer's

13

intervention right is necessary to resolve the issue and provide for subrogation.

Intervention is governed by Hawai'i Rules of Civil Procedure Rule 24. Rule 24(a)(2) allows intervention when an applicant's interest is at risk and is not "adequately represented by existing parties." Intervention sometimes comes when an insurer mistrusts a plaintiff's skill to litigate claims. The insurer doesn't want to link its subrogation rights to a rinky-dink legal strategy. Something like Dongbu bemoans here: potentially viable claims omitted from the complaint.

Hawai'i law allows employers to pursue their subrogation rights only through HRS § 386-8. Hawaiian Dredging, 142 Hawai'i at 435, 420 P.3d at 366. Once the employee sues, as Park did, the employer's only option is to intervene in the employee's suit. See HRS § 386-8(b)-(c). That's why Dongbu's claims survive: hitching its fate to Park barricades its only path to relief. A workers' compensation insurer has another way – around the plaintiff – to pursue its subrogation right.

Answering No as the City wants disincentivizes employers from joining cases where there is risk of dismissal. This may lead to lower recovery. If an employer thinks that a plaintiff's case will get dismissed, it has little reason to spend money and prepare its own case. Employers lack motivation

to strengthen a weak case by intervening. The right to intervene erodes.

Disincentivizing intervention harms injured employees unable to retain solid legal representation. An employer's workers' compensation lien cuts into the damages available to pay a plaintiff's attorney. See HRS § 386-8(f). Because an employer's complaint would only be as strong as the under-represented employee, an employer – usually better funded – is incentivized not to waste legal expenses by joining weaker cases.

In contrast, allowing an insurer to pursue its claims benefits both insurer and insured. See Moranz, 150 Hawai'i at 398, 502 P.3d at 499 (the legislature "recognizes that a third-party action can result in recovery from a third person which benefits both the employee and the insurer, even when the action is prosecuted by the insurer or employee alone") (cleaned up). HRS § 386-8(e) entitles Park to "any excess" compensation Dongbu receives, while Dongbu can claim reimbursement from Park's recovery. See HRS § 386-8(f). Dongbu's intervention right makes it more likely that third-party tortfeasors pay what "[they] would ordinarily pay." Moranz, 150 Hawai'i at 400, 502 P.3d at 501 (cleaned up).

**D.**

Last, the City argues that claim preclusion applies. We disagree.

The court dismissed Park's claims and two of Dongbu's four claims. Dongbu's negligent supervision and negligent training claims remain. The circuit court never decided these claims because the City withdrew its motion to dismiss. The City refocused its revamped motion on its claim preclusion theory.

Claim preclusion (res judicata) ensures that parties cannot relitigate claims that were decided or could've been decided in a final judgment. Bremer v. Weeks, 104 Hawaiʻi 43, 53–54, 85 P.3d 150, 160–61 (2004). Dongbu's remaining claims though, are new. They were not litigated to final judgment. The summary judgment against Park does not glue Dongbu.

The City gives no adequate reason why Park's dismissal should apply to Dongbu's additional claims. Res judicata applies "where matters have already been tried and decided on the merits." Kauhane v. Acutron Co., Inc., 71 Haw. 458, 463, 795 P.2d 276, 278–79 (1990). Here, Dongbu's negligent training and supervision claims are not yet decided. Though res judicata forbids relitigation, it promotes access to justice. It "permits every litigant to have an opportunity to try [their] case on the merits." Id. at 463, 795 P.2d at 279 (cleaned up).

That's all Dongbu wants – to litigate the negligent training and supervision claim for the first time.

The City had a chance to make Dongbu's remaining claims go away. It filed a motion to dismiss those claims. But it withdrew that motion. Then, it filed a new motion, seemingly trying to leverage an offbeat legal theory to backdoor a dismissal.

The City acknowledged its unusual tactic. Pitching the City's "claim" argument to the circuit court, counsel conceded, "I understand, Your Honor, that in a normal case, we talk about claims a little differently." Ordinarily parties can "move for partial summary judgment or I'd move for partial judgment on the pleadings and [the judge] would go claim by claim." Counsel voiced the sound approach. Our justice system prefers adjudication on the merits. JK v. DK, 153 Hawai'i 268, 278, 533 P.3d 1215, 1225 (2023). In a case like this, we feel parties should seek summary judgment for each cause of action, applying the usual summary judgment standard.

**IV.**

An intervening workers' compensation subrogee-insurer may make any claim that a subrogor-plaintiff may make at the outset of the case. If the plaintiff's claims are dismissed, the insurer's claims remain.

We answer Yes to the reserved question.

Saori P. Takahashi
(Michele-Lynn E. Luke and
Bradford Chun on the briefs)
for appellant

Robert M. Kohn
(Richard D. Lewallen and
Kalikolehuaopana'ewa J.
Warrington on the briefs)
for appellee

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Kathleen N.A. Watanabe

/s/ Robert D.S. Kim

