*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

Electronically Filed
Supreme Court
SCWC-17-0000006
11-JAN-2022
08:12 AM
Dkt. 13 OP

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

PATRICIA MORANZ,
Petitioner/Plaintiff-Appellant,

vs.

HARBOR MALL, LLC,
Respondent/Defendant-Appellee,

and

DTRIC INSURANCE COMPANY, LTD.,
Respondent/Intervenor-Appellee.

_____

SCWC-17-0000006

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000006; CIVIL NO. 14-1-0172)

JANUARY 11, 2022

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY WILSON, J.

Petitioner/Plaintiff-Appellant Patricia Moranz

("Moranz") was injured near her place of employment on August

28, 2012 and received workers' compensation ("WC") benefits from

her employer's WC insurance carrier, Respondent/Intervenor-Appellee DTRIC Insurance Company, Ltd. ("DTRIC") shortly thereafter. In 2014, Moranz brought suit in the Circuit Court of the Fifth Circuit ("circuit court") against Harbor Mall, LLC, ("Harbor Mall") the owner of the building in which she was injured, and in 2016, reached a settlement with Harbor Mall for $200,000.00 ("Harbor Mall settlement"). Around the time of the Harbor Mall settlement, DTRIC sought reimbursement of those WC benefits it had paid to Moranz after her accident under Hawai'i Revised Statutes ("HRS") § 386-8 (2015)[1] and Alvarado v. Kiewit Pacific, Co., 92 Hawai'i 515, 520, 993 P.2d 549, 554 (2000).[2]

---

[1]   HRS § 386-8 provides in relevant part:

(d) No release or settlement of any claim or action under this section is valid without the written consent of both employer and employee. The entire amount of the settlement after deductions for attorney's fees and costs as provided in this section is subject to the employer's right of reimbursement for the employer's compensation payments under this chapter and the employer's expenses and costs of action.

. . . .

(f) If the action is prosecuted by the employee alone, the employee shall be entitled to apply out of the amount of the judgment for damages, or settlement in case the action is compromised before judgment, the reasonable litigation expenses incurred in preparation and prosecution of the action, together with a reasonable attorney's fee, which shall be based solely upon the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the employer. After the payment of the expenses and attorney's fee, there shall be applied out of the amount of the judgment or settlement proceeds, the amount of the employer's expenditure for compensation, less the employer's share of the expenses and attorney's fee. On application of the employer, the court

(continued . . .)

Under HRS § 386-8 and <u>Alvarado</u>, when an injured

employee recovers a third-party settlement, an insurer[3] is

_____

(. . . continued)

> shall allow as a first lien against the amount of the
> judgment for damages or settlement proceeds, the amount of
> the employer's expenditure for compensation, less the
> employer's share of the expenses and attorney's fee.

HRS § 386-8.  Under chapter 386, "[t]he insurer of an employer is subject to
the employer's liabilities[.]"  HRS § 386-1 (2015).  However, the insurer is
also "entitled to rights and remedies under [chapter 386] as far as
applicable."  <u>Id.</u>  DTRIC is the WC insurance carrier for Moranz's employer.
Thus, DTRIC is entitled to the "rights and remedies" afforded to Moranz's
employer under chapter 386 in the course of Moranz's WC action and
settlement.

> [2]     The formula established by the supreme court in <u>Alvarado</u> is as
follows:

> > [U]nder HRS § 386-8, the starting point to determine an
> > employer's "share" is to be calculated as (1) the fraction
> > equal to the amount of workers' compensation expended, plus
> > calculable future benefits, divided by the total amount of
> > the settlement.  This fraction will then be (2) multiplied
> > by the total amount of reasonable attorney's fees and costs
> > incurred by the employee in the course of pursuing the
> > recovery action. This "share" (computed in steps 1 and 2)
> > should then be (3) subtracted from the total compensation
> > already expended to date, by the employer.  This results in
> > a first lien that the employer may assert against the
> > settlement amount. However, prior to the execution of the
> > lien, the remainder of the attorney's fees and costs should
> > be (4) deducted from the settlement corpus.  Then, (5) the
> > amount of the employer's first lien (already calculated as
> > compensation expended minus share of the attorney's fees
> > and costs) may be asserted against the settlement.  If a
> > portion of the settlement corpus remains after the
> > employer's execution of the lien (6), the employee is
> > entitled to that remainder, subject to the requirement that
> > the employee first exhaust all necessary future workers'
> > compensation payments from that remainder prior to
> > requesting future compensatory payments from the employer
> > or its insurance carrier for the compensable injuries
> > arising out of the same incident.

<u>Alvarado</u>, 92 Hawai'i at 518-19, 993 P.2d 552-53.

> [3]     DTRIC is referred to as the "employer" in the lower court
proceedings.  Although DTRIC is "subject to the employer's liabilities" and

(continued . . .)

entitled to reimbursement of all WC benefits it has paid the employee, less its "share" of reasonable attorney's fees and costs incurred by the employee in pursuing the third-party action.  Per HRS § 386-8 and Alvarado, we now clarify (1) the proper timing of Alvarado calculations, which determines the reimbursement due the insurer from the third-party settlement and (2) the reimbursement process for an insurer when the amount of WC benefits the insurer has already dispensed to the employee ("paid compensation") is less than the amount it owes the employee for its "share" of attorney's costs and fees for the third-party action.  Here, the parties disagreed over whether certain WC benefits that DTRIC owed Moranz ("DTRIC settlement") were properly classified as "paid compensation" or benefits that DTRIC owed Moranz in the future ("calculable future benefits") under the Alvarado formula.  The parties also disagreed over the process of DTRIC's reimbursement of WC benefits because DTRIC's "share" of attorney's fees and costs exceeded the amount it had previously contributed to Moranz as "paid compensation."

We now clarify that Alvarado calculations shall be performed based on the date on which the employee receives the

(. . . continued)

"entitled to rights and remedies" of the employer under chapter 386, DTRIC is not Moranz's employer and, thus, will be referred to as the "insurer" in this opinion.  HRS § 386-1; see supra note 1.

4

third-party recovery. In this case, at the time Moranz received the third-party recovery (i.e., the Harbor Mall settlement) on or about September 20, 2016, DTRIC had not yet paid its settlement; thus, the DTRIC settlement should have been categorized as a "calculable future benefit" rather than "paid compensation" under the Alvarado formula.

We also emphasize that an insurer's "share" of the attorney's fees and costs the employee incurs while pursuing third-party recovery is based on the insurer's total WC liability. Thus, we now clarify that the insurer must pay its full pro rata "share" regardless of the amount the insurer has contributed in "paid compensation" versus the amount it still owes in "calculable future benefits" at the time the employee receives the third-party recovery. In this case, DTRIC owes its full "share" of Moranz's attorney's fees and costs in the amount of $89,140.17, based on its total WC liability of $189,062.13 ($63,245.41 in "paid compensation" plus $125,816.72 in "future calculable benefits"). Under HRS § 386-8(d), DTRIC is entitled to reimbursement of the $63,245.41 it has expended in "paid compensation." Further, under HRS § 386-8(i), DTRIC is "relieved from the obligation to make further compensation payments to [Moranz] . . . up to the entire amount of the balance of the settlement or the judgment," meaning that Moranz must exhaust $125,816.72 in "calculable future benefits" from

5

the remainder of the Harbor Mall settlement.  After paying her attorney's fees and costs ($94,298.29), reimbursing DTRIC its "paid compensation" ($63,245.41), and exhausting "calculable future benefits" ($125,816.72) from the $200,000.00 Harbor Mall settlement, Moranz retains the remainder:  $5,779.75 in excess of her WC benefits.

## I.   BACKGROUND

### A.   Factual Background & Circuit Court Proceedings

Moranz was injured while working on August 28, 2012 after she fell in a stairway near her place of employment in Lihue, Kaua'i.  Moranz filed a claim for WC benefits, and received "WC medical, indemnity[,] and vocational rehabilitation benefits" from DTRIC pursuant to chapter 386 of the HRS.

### 1.   Harbor Mall Lawsuit and Settlement

On August 25, 2014, Moranz filed a civil lawsuit against Harbor Mall, alleging negligence in maintaining the stairway.  Before trial was set to begin in July 2016, Moranz and Harbor Mall reached a settlement agreement, in which Harbor Mall agreed to pay $200,000.00 in general damages and maintained its denial of liability.  A check for the $200,000.00 settlement was transmitted from Harbor Mall to Moranz on September 16, 2016.  On September 22, 2016, the circuit court granted a Motion

to Intervene filed by DTRIC.[4]  On September 28, 2016, with the

consent of all parties, Harbor Mall was dismissed from the

lawsuit.

 2.  **DTRIC's WC Lien**

On May 24, 2016, Moranz filed a "Motion for

Determination of Validity of Claim of Lien of DTRIC" and argued

that DTRIC was not entitled to reimbursement under HRS § 386-8

for the WC benefits it had previously paid Moranz because:

(1) DTRIC could not prove "duplication" within the settlement of

the WC benefits it had paid, (2) DTRIC was entitled only to

reimbursement of special damages for "medical and rehabilitative

expenses and lost income" and the settlement was for "general

damages only," and (3) considering equitable principles, Moranz

would not be "made whole by receiving only a portion" of the

settlement.  Moranz also alleged that DTRIC had failed to

provide her with WC documentation, which "necessitated" bringing

the lawsuit against Harbor Mall, and that DTRIC continued to

refuse to cooperate and provide her with necessary WC

documentation.

DTRIC maintained that it was entitled to reimbursement

of WC benefits it had paid Moranz, initially claiming a lien in

---

 [4]     The Honorable Randal G.B. Valenciano presided.

the amount of $66,177.35.[5]  DTRIC asserted that, under HRS § 386-8 and Alvarado, it was entitled to the entire amount of its lien less "reasonable attorney fees and its proportional share of cost of litigation."  DTRIC contended that HRS § 386-8 and case law did not support Moranz's argument that only special or duplicated damages were eligible for reimbursement.  DTRIC

---

[5]     DTRIC claimed in its Memorandum in Opposition it paid $63,518.41 in WC benefits ($30,747.48 in medical benefits, $20,276.43 in indemnity benefits, and $12,494.50 in vocational rehabilitation benefits) to Moranz.  However, based on a declaration from DTRIC Claims Examiner Aurelia C. Gamponia, it appeared DTRIC had paid only $63,245.41 in benefits ($30,474.48 in medical benefits, $20,276.43 in indemnity benefits, and $12,494.50 in vocational rehabilitation benefits).  This discrepancy appears to stem from a clerical error in a figure Gamponia used in her declaration:  $30,474.48 in medical benefits as opposed to the correct $30,747.48 figure.  The error discussed above does not explain the $2,658.94 difference between the WC benefits paid and the total lien amount claimed by DTRIC in its Opposition.

In a later filing, DTRIC changed its requested lien figure to $63,518.41, which represents the amount of WC benefits DTRIC claimed it had paid Moranz.

DTRIC filed a separate memorandum under seal containing its Alvarado calculations.  In its memorandum, DTRIC categorized $125,816.72 in permanent partial disability benefits as "calculable future benefits," which led to a negative lien figure in step 3, as its share exceeded its WC expenditures.  However, DTRIC represented its figure for "paid compensation" as the appropriate lien figure in step 5.  DTRIC also noted it would be entitled to exhaust $125,816.72 in future benefits against Moranz's remaining recovery:

    (1)  $63,518.41 [paid comp.] + $125,816.72 [future benefits]
        $200,000.00 [Harbor Mall settlement] = 95%

    (2)  95% x $93,000.00 [costs and fees] = $88,350.00
        [DTRIC's share]

    (3)  $63,518.41 [paid comp.] - $88,350.00
        [share] = -$23,831.55 [lien]

    (4)  $200,000.00 [Harbor Mall settlement] - $4650.00
        [remainder of costs and fees] = $195,350.00

    (5)  $195,350.00 - $63,518.41 [lien] = $131,831.59

    (6)  $131,831.59 - $125,816.72 [future benefits] =
        $6014.87 [remainder]

argued that it was also entitled to a credit on future benefits, that is, relief from the obligation to make further compensation payments, up to Moranz's net recovery from the Harbor Mall settlement.

At oral argument on the Motion, Moranz asked the circuit court to resolve three issues: (1) the amount, if any, of the Harbor Mall settlement that should be eligible for reimbursement to DTRIC; (2) the amount of DTRIC's lien; and (3) DTRIC's entitlement to a credit against future benefits. Moranz emphasized that this court regarded the Alvarado formula as a "starting point" for reimbursement, and argued that the circuit court's discretion was not limited to determining an insurer's "share" of attorney's fees and costs. Moranz also asked the circuit court to apply the "make-whole" doctrine, which would prioritize the Moranz's right to recovery over DTRIC's right to reimbursement. DTRIC argued that Moranz sought to "avoid the lien issue" by claiming DTRIC could not recover from a settlement designated as "general damages only." DTRIC emphasized that HRS § 386-8 limited the circuit court's power to setting reasonable attorney's fees and costs. DTRIC objected to the reliance on equitable remedies such as the "make-whole" doctrine where, as here, there was an established method (i.e., the Alvarado formula) to determine its lien and "share" of costs and fees. DTRIC also represented to the circuit court that a WC

9

settlement of $125,816.72[6] ("DTRIC settlement") based on permanent partial disability liability was currently pending approval by the Department of Labor and Industrial Relations ("DLIR").

The circuit court noted that a ruling that settlements designated "general damages only" cut off an insurer's right to reimbursement would create "a tidal wave of general damages claims to avoid these liens[.]"  The circuit court upheld DTRIC's right to reimbursement from the Harbor Mall settlement, and found that while DTRIC had generally consented to the settlement, it had not agreed to reducing its lien.[7]  Thus, the circuit court held that DTRIC was "entitled to assert its lien."  The circuit court clarified that the "only reduction" needed was for "reasonable litigation expenses and the amount of attorney's fees," pursuant to HRS § 386-8 and Alvarado.  The circuit court

---

[6]    DTRIC and Moranz signed a Stipulation and Settlement Agreement and Order on September 1, 2016, which included: $19,671.43 for temporary total disability, $605.00 for lost wages, $125,316.72 for permanent partial disability, and $500.00 for disfigurement.  To avoid confusion, see infra note 12, for the purposes of this opinion, "DTRIC settlement" refers to the $125,316.72 for permanent partial disability plus the $500.00 for disfigurement, for a total amount of $125,816.72.

[7]    DTRIC communicated its consent to the Harbor Mall settlement in a letter sent to Moranz on March 12, 2016, and filed its formal consent to the settlement on September 12, 2016.  In its March 12 letter to Moranz, DTRIC stated that it would consent to a settlement with Harbor Mall "provided the settlement is $200,000.00 or more[,]" but noted that "the issues regarding the lien repayment to DTRIC and applicability of the [future] credit [available to DTRIC] have yet to be determined."

10

directed the parties to calculate the appropriate deductions in accordance with Alvarado.

### 3. DTRIC Settlement[8]

On September 1, 2016, DTRIC and Moranz signed a Stipulation and Settlement Agreement and Order for the DTRIC settlement. The $125,816.72 DTRIC settlement was transmitted to the DLIR for approval on September 12, 2016, and approved on September 28, 2016. Following this approval, on October 18, 2016, DTRIC "made payment" of $19,732.89 to Moranz, which reflected: a settlement in the amount of $125,316.72,[9] minus $5,927.13 of attorney's fees and costs and a $99,656.70 "subrogation credit" for its lien.

### 4. Disputes Over Alvarado Calculations

There was lengthy correspondence between the parties to resolve the form of the circuit court's order and to determine the correct Alvarado calculations.

---

[8]    Due to what appears to be a mistake on DTRIC's part, the DTRIC settlement was not pending approval at the time of the August 23 hearing, as DTRIC had represented to the circuit court. The DTRIC settlement was transmitted to the Director of the DLIR for approval on September 12, 2016.

[9]    Although the correct amount of the DTRIC settlement is $125,816.72, DTRIC based its October 18, 2016 payment to Moranz on an amount of $125,316.72. See supra note 6; infra note 12.

11

On September 15, 2016, Moranz submitted a proposed order and <u>Alvarado</u> calculations to the circuit court.[10]  Moranz used the below numbers in her calculations:

DTRIC's paid compensation:[11]                $63,245.41
    *(WC benefits paid to Moranz)*

DTRIC's calculable future benefits:    $125,816.72
    *(DTRIC settlement)*

DTRIC's share of fees and costs:       $89,140.17

Based on the above calculations, Moranz concluded that because DTRIC's "share" of fees and costs ($89,140.17) exceeded its "paid compensation" ($63,245.41), DTRIC was due no reimbursement from the $200,000.00 Harbor Mall settlement.  Moranz contended that if she received the Harbor Mall settlement before the DTRIC settlement, DTRIC would not be entitled to a lien.  However,

---

[10]    On September 27, 2016, Moranz submitted a proposed order to the circuit court that was identical to her September 15 submission except that the caption had been updated to reflect that DTRIC had been accepted as a plaintiff-intervenor.

[11]    "Paid compensation" refers to both "amount of [WC] expended" and "total compensation already expended to date."  <u>Alvarado</u>, 92 Hawai'i at 518–19, 993 P.2d 552–53.  Our example in <u>Alvarado</u> confirms these terms are synonymous:

> Assume a settlement in the amount of $200,000, attorney's fees and costs totaling $60,000, <u>[WC] expenditures to date equaling $100,000</u>, and it is agreed that the injured employee will require $25,000 in future [WC] benefit payments.  The fraction would be (1) $100,000 plus $25,000 divided by $200,000 or .625.  This fraction should then be (2) multiplied by $60,000, or $37,500.  This share should then be (3) <u>subtracted from the $100,000 compensation paid</u>, resulting in a lien of $62,500.

<u>Id.</u> at 520, 993 P.2d at 554 (emphasis added).

Moranz conceded that if DTRIC paid the DTRIC settlement before she received the Harbor Mall settlement, DTRIC would have a lien in the amount of $99,921.96.

On September 19, 2016, DTRIC submitted a proposed order and Alvarado calculations. DTRIC included two versions of Alvarado calculations: one in which the DTRIC settlement was treated as "paid compensation" and one in which it was treated as a "calculable future benefit." Like Moranz, DTRIC concluded that if it paid Moranz the DTRIC settlement before she received the Harbor Mall settlement--i.e., if the DTRIC settlement was categorized as "paid compensation"--DTRIC would have a $99,656.70 lien.[12] DTRIC also conceded that if Moranz received the Harbor Mall settlement before it paid the DTRIC settlement-- i.e., if the DTRIC settlement was categorized as a "calculable future benefit"--Moranz would be entitled to the entirety of the Harbor Mall settlement, provided that DTRIC would be entitled to a $99,656.70 credit against the DTRIC settlement.

---

[12] The circuit court sought clarification from the parties as to why their Alvarado calculations resulted in different lien amounts: $99,921.96 (Moranz) versus $99,656.70 (DTRIC). The discrepancy was due to different figures used to calculate future benefits: Moranz used an amount of $125,816.72, while DTRIC used $125,316.72. The discrepancy was explained by a $500.00 disfigurement payment, which Moranz had factored into future benefits, but which DTRIC had not. DTRIC admitted its mistake and confirmed that it believed $99,921.96 to be the correct lien amount.

13

On October 27, 2016, DTRIC filed a proposed order reflecting an updated lien amount of $99,921.96.[13]  Moranz objected to DTRIC's October 27 proposed order, arguing that because "the Alvarado formula is applied at the time of the third party settlement[,]" there was no basis to include the DTRIC settlement as "paid compensation" because it was still pending at the time the Harbor Mall settlement was paid.[14]  Moranz proposed the below Alvarado calculations:

> Step 1: The fraction equal to the amount of workers' compensation expended ($63,245.41), plus calculable future benefits ($125,816.72), divided by the total amount of the settlement ($200,000) equals 94.53% ($63,245.41 + $125,816.72 = $189,062.13 / $200,000 = 94.53%).
>
> Step 2: The fraction, 94.53%, is then multiplied by the total amount of attorney's fees and costs incurred by the employee in the course of pursuing the recovery action, $94,298.29, to determine DTRIC's "share" of Plaintiff's attorneys[sic] fees and costs.  Thus, DTRIC's "share of the fees/costs is $89,140.17 (94.53% x $94,298.29 attorneys[sic] fees and costs = $89,140.17).
>
> Step 3: This "share" (computed in steps 1 and 2) is then subtracted from the total compensation already expended to date, by the employer, in order to determine the first lien that the employer may assert against the settlement.  The Paid Compensation ($63,245.41) less DTRIC's share of the fees and costs ($89,140.17) equals $ -25,894.76 ($89,140.17 - $63,245.41 = $-25,894.76), a negative number.
>
> Because DTRIC's share of the fees and costs ($89,140.17) exceeds the amount of compensation benefits paid to date ($63,245.41), there is no reimbursement due out of the third party settlement[.] . .
>
> Step 4: Prior to the execution of the lien, the remainder of the attorney's fees and costs should be

---

[13]    See supra note 12.

[14]    As stated above, DTRIC "made payment" on the DTRIC settlement to Moranz on October 18, 2016, about a month after Moranz received payment on the Harbor Mall settlement on or about September 20, 2016.

deducted from the settlement corpus. The remainder of the attorney's fees and costs to be deducted is $5,158.12 ($94,298.29 attorneys[sic] fees and costs - $89,140.17 DTRIC's share of the fees and costs = $5,158.12). The settlement corpus is the full $200,000. The net settlement is therefore $105,701.71 ($200,000 - $94,298.29 = $105,701.71). . .

Step 5: Then, the amount of the employer's first lien (already calculated as compensation expended minus share of the attorney's fees and costs), $-25,894.76 (a negative number), would be asserted against the settlement. However, a negative number indicates there is no lien due out of the settlement proceeds.

On December 5, 2016, the circuit court entered an order ("December 5 Order") denying Moranz's Motion for Determination of Validity of Claim of Lien of DTRIC, and finding that DTRIC was entitled to a lien in the amount of $99,921.96 against the Harbor Mall settlement.[15] The circuit court entered its Judgment on December 27, 2016. The circuit court's December 5 Order did not include any Alvarado calculations.

## B.    Appellate Proceedings

### 1.    ICA Appeal

On appeal to the Intermediate Court of Appeals ("ICA"), Moranz presented three points of error, claiming the circuit court erred when it:  (1) declined to consider common law and equitable principles to limit DTRIC's subrogation and reimbursement rights; (2) awarded a lien based on unpaid

---

[15]    The circuit court did not include in its Order a copy of the Alvarado calculations it used. It appears the court used the latest calculations and order proposed by DTRIC, which calculated a lien of $99,921.96:  $63,245.41 [past WC benefits] + $125,816.72 [DTRIC settlement] = $189,062.13 [total paid compensation] - $89,140.17 [DTRIC's share of attorney's fees and costs] = $99,921.96 [first lien].

15

benefits; and (3) relied on unpaid future compensation when calculating the lien reduction for attorney's fees and costs. The ICA affirmed the circuit court's December 5 Order and December 27 Judgment. First, the ICA held that the circuit court correctly interpreted HRS § 386-8 and found that the statute's "plain and unambiguous terms do not provide or allow for the [application of] equitable considerations[.]" Next, the ICA concluded that the circuit court did not err in calculating the amount of DTRIC's lien. The ICA reasoned that because Moranz had "executed a stipulated [WC] settlement" before the circuit court entered its December 5 Order, the circuit court did not err in including the $125,816.72 DTRIC settlement as "paid compensation" in calculating DTRIC's lien. The ICA calculated the same lien amount--$99,921.96--as the circuit court and included the following Alvarado calculations:[16]

> **Step 1**: The fraction equal to the amount of workers' compensation expended, plus calculable future benefits, divided by the total amount of the settlement equals **.9453** ($189,062.13 ÷ $200,000).

> **Step 2**: The fraction is multiplied by the total amount of reasonable attorney's fees and costs incurred by

_____

[16] Like DTRIC and the circuit court, the ICA used the $189,062.13 figure for DTRIC's paid compensation, comprised of:

> $30,474.48 medical expenses
> $20,276.43 indemnity payments
> $12,494.50 vocational rehab
> $125,316.72 DLIR Settlement (permanent partial disability)
> $500.000 disfigurement
> _____
> $189,062.13 Paid Compensation

Moranz in the recovery action, which results in DTRIC's "share" of **$89,140.17** (.9453 x $94,298.29).

**Step 3**: This "share" is subtracted from the total compensation already expended to date, by the employer, which is the first lien in the amount of **$99,921.96** ($189,062.13-$89,140.17) that DTRIC may assert against the settlement amount.

**Step 4**: Prior to the execution of the lien, the remainder of the attorney's fees and costs should be deducted from the settlement corpus, resulting in **$194,841.88** ($200,000-$5,158.12).

**Step 5**: The amount of the employer's first lien may be asserted against the settlement, $194,841.88-$99,921.96.

**Step 6**: If a portion of the settlement corpus remains after the employer's execution of the lien, the employee is entitled to that remainder, which is **$94,919.92**.

## 2. Application for Writ of Certiorari

Moranz filed a timely Application for Writ of Certiorari with this court on March 18, 2021. In her application, Moranz presents two questions: (1) whether the ICA gravely erred in interpreting HRS § 386-8 without considering equitable subrogation principles when determining the insurer's right of reimbursement; and (2) whether the ICA gravely erred in interpreting HRS § 386-8 "to allow an insurer to claim unexpended future benefits in its right of reimbursement." Moranz's Application was granted.

### III. STANDARDS OF REVIEW

## A. Statutory Interpretation

"Statutory interpretation is a question of law reviewable de novo." State v. Wheeler, 121 Hawaiʻi 383, 390, 219

17

P.3d 1170, 1177 (2009) (internal quotation marks omitted).  This

court's construction of statutes is guided by the following:

> First, the fundamental starting point for statutory
> interpretation is the language of the statute itself.
> Second, where the statutory language is plain and
> unambiguous, our sole duty is to give effect to its plain
> and obvious meaning.  Third, implicit in the task of
> statutory construction is our foremost obligation to
> ascertain and give effect to the intention of the
> legislature, which is to be obtained primarily from the
> language contained in the statute itself.  Fourth, when
> there is doubt, doubleness of meaning, or indistinctiveness
> or uncertainty of an expression used in a statute, an
> ambiguity exists.

Id. (quoting Citizens Against Reckless Dev. v. Zoning Bd. of

Appeals of Honolulu, 114 Hawai'i 184, 193–94, 159 P.3d 143, 152–

53 (2007)).  When there is ambiguity in a statute, "the meaning

of the ambiguous words may be sought by examining the context,

with which the ambiguous words, phrases, and sentences may be

compared, in order to ascertain their true meaning."  Id.  A

court may also resort to extrinsic aids in determining

legislative intent, such as legislative history or the reason

and spirit of the law.  Id.

## IV.  DISCUSSION

## A.  The ICA Did Not Err by Declining to Consider Equitable Subrogation Principles When Determining DTRIC's Right of Reimbursement Under HRS § 386-8

Moranz argues that common law equitable subrogation

principles should apply to limit DTRIC's right of reimbursement

under HRS § 386-8.  The ICA rejected this argument, finding that

HRS § 386-8's "plain and unambiguous terms do not provide or

allow for" the application of equitable principles.  The ICA is correct:  the language of HRS § 386-8 is plain and unambiguous, such that it would be inappropriate to use equitable principles in its interpretation.

When interpreting a statute, "the fundamental starting point . . . is the language of the statute itself" and "where the statutory language is plain and unambiguous, [this court's] sole duty is to give effect to its plain and obvious meaning." Wheeler, 121 Hawai'i at 390, 219 P.3d at 1177 (quoting Citizens Against Reckless Dev., 114 Hawai'i at 193–94, 159 P.3d at 152–53).  Thus, we turn to the language of HRS § 386-8, which provides that when an injured employee reaches a settlement with a third party, the employee's WC insurer is entitled to reimbursement out of that settlement:

> (f)  If the action is prosecuted by the employee alone, the employee shall be entitled to apply out of the amount of the judgment for damages, or settlement in case the action is compromised before judgment, the reasonable litigation expenses incurred in preparation and prosecution of the action, together with a reasonable attorney's fee, which shall be based solely upon the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the [insurer].  After the payment of the expenses and attorney's fee, <u>there shall be applied out of the amount of the judgment or settlement proceeds, the amount of the [insurer]'s expenditure for compensation, less the [insurer]'s share of the expenses and attorney's fee</u>.  On application of the [insurer], the court shall allow as a first lien against the amount of the judgment for damages or settlement proceeds, the amount of the [insurer]'s expenditure for compensation, less the [insurer]'s share of the expenses and attorney's fee.

HRS § 386-8(f) (emphasis added).  The statute requires such settlements to be approved in writing by both the employee and

19

the insurer in order to be valid, and clarifies that "[t]he entire amount of the settlement after deductions for attorney's fees and costs as provided in this section is subject to the [insurer]'s right of reimbursement for the [insurer]'s compensation payments under this chapter and the [insurer]'s expenses and costs of action."  HRS § 386-8(d) (emphasis added).

The language of HRS § 386-8 is plain and unambiguous: an insurer is entitled to the "amount of the [insurer]'s expenditure for compensation" less its "share" of costs and fees, deducted from the "entire amount of the settlement."  HRS § 386-8(d), (f).  HRS § 386-8(f) states plainly that the insurer is entitled to reimbursement of its "expenditure for compensation"; there is no additional language limiting reimbursement to "special damages" or those benefits the insurer can prove are "duplicated" by the settlement.  HRS § 386-8(d) also states plainly that the "entire amount of the settlement . . . is subject to the [insurer]'s right of reimbursement."  (emphasis added).  The statute's use of the word "entire" is logically opposed to any argument that DTRIC is entitled only to reimbursement from a portion of the settlement. Had the legislature intended to limit an insurer's reimbursement to a portion of the employee's third-party settlement, it could have done so by expressly limiting reimbursement in HRS § 386-8 to duplicated benefits or special damages, or to only a portion

20

of the employee's recovery.[17]  The legislature did no such thing.
The language of HRS § 386-8 unambiguously indicates that an
insurer is entitled to reimbursement from the entire settlement
amount, and we decline to use equitable principles to alter this
interpretation.

Likewise, nothing in Alvarado constitutes an
endorsement of using equitable principles to adjust the amount
of an insurer's reimbursement or an employee's recovery under
HRS § 386-8, beyond adjusting the insurer's "share" of costs and
fees.  While we stated in Alvarado that the formula is a
"starting point[] in determining an employer's share of
reasonable attorney's fees and costs[,]" we also explained that
"the circuit court retains the discretion to consider each case
on its merits" if the court finds that the insurer's "share" is
"not reasonable in light of the particular circumstances of a

---

[17]     See, e.g., HRS § 392-46 (stating that "the insurer . . .
providing disability benefits shall be subrogated to, and have a lien upon,
the rights of the individual against the third party to the extent that the
damages include wage loss during the period of disability for which temporary
disability benefits were received in the amount of such benefits" (emphasis
added)); HRS § 431:10C-307 ("Whenever any person effects a tort liability
recovery for accidental harm, whether by suit or settlement, which duplicates
personal injury protection benefits already paid under the provisions of this
article, the motor vehicle insurer shall be reimbursed fifty per cent of the
personal injury protection benefits paid to or on behalf of the person
receiving the duplicate benefits up to the maximum limit." (emphasis added));
HRS § 663-10(a) ("The judgment entered . . . shall include a statement of the
amounts, if any, due and owing to [a valid lienholder] and to be paid to the
lienholder out of the amount of the corresponding special damages recovered
by the judgment or settlement." (emphasis added)); HRS § 346-37 ("The lien
shall be satisfied from that portion of the settlement, award, or judgment
allocated or allocable to payments by the department for medical assistance
and burial payments." (emphasis added)).

case[.]"  92 Hawai'i at 520, 993 P.2d at 554 (emphasis added).

For example, if an insurer "does not cooperate and/or hinders an

employee's attempt to pursue recovery," id., the circuit court

might order the insurer to pay a larger "share" because the

insurer's bad faith actions directly increased costs and fees

and it would be unfair to force the employee to shoulder these

higher costs and fees proportionally.  However, discretion

extends only to a court's ability to "determin[e] an [insurer]'s

share of reasonable attorney's fees and costs."  Id.  Our

emphasis in Alvarado on exacting a "share" from the insurer that

reflects reasonable costs and fees parallels the language of HRS

§ 386-8, which entitles an employee

> to apply out of the amount of the judgment . . . or
> settlement . . . the reasonable litigation expenses
> incurred in preparation and prosecution of the action,
> together with a reasonable attorney's fee, which shall be
> based solely upon the services rendered by the employee's
> attorney in effecting recovery both for the benefit of the
> employee and the [insurer].

HRS § 386-8(f) (emphasis added).  Thus, while the circuit court

retains discretion to adjust what "share" of costs and fees it

deems reasonable to impose on an insurer, there is no basis in

the language of HRS § 386-8 to conclude that the circuit court

also has discretion to (1) decrease the reimbursement due an

insurer or (2) increase the remainder of the settlement

ultimately awarded to an injured employee who the court feels is

not "made whole" by her recovery.

In the present case, the circuit court could have determined that DTRIC's "share" of attorney's fees and costs of $89,140.17, calculated under the Alvarado formula, was not reasonable, especially given Moranz's allegations that DTRIC failed to cooperate in and hindered her attempt to pursue recovery from Harbor Mall. The circuit court could have increased DTRIC's "share" of attorney's fees and costs, thereby increasing Moranz's recovery. However, the circuit court did not make this determination and chose not to adjust DTRIC's "share." The ICA was correct in rejecting Moranz's argument that equitable or common law subrogation principles apply to HRS § 386-8.

**B.  The ICA Erred by Including the DTRIC Settlement as Paid Compensation Under the Alvarado Formula**

Moranz argues that the $125,816.72 DTRIC settlement should have been treated as a "calculable future benefit" rather than "paid compensation" in DTRIC's lien calculation because she received the DTRIC settlement payment after she received the Harbor Mall settlement payment. The ICA rejected this argument, finding that the DTRIC settlement was properly regarded as "paid compensation" at the time of the circuit court's December 5 Order, resulting in a lien calculation of $99,921.96. The ICA was incorrect; the DTRIC settlement should have been included as a "calculable future benefit" under the Alvarado formula.

23

The issue here, then, is: at what point in time is an item previously categorized as a "calculable future benefit" properly regarded as "paid compensation"? The resolution of this issue turns on when the Alvarado calculation is performed. Under Moranz's approach, the key date (i.e., the date on which Alvarado calculations should occur) is the day on which the third-party recovery is received by the employee; any WC benefits or settlement paid after receipt of the third-party recovery is not "paid compensation," but rather, a "calculable future benefit" under the Alvarado formula. Under the approach used by the ICA, the key date is the day on which the circuit court enters its order; any WC benefits or settlement paid before the circuit court's order is "paid compensation," and anything paid after the circuit court's order is a "calculable future benefit." Under the ICA approach, the date on which the third-party recovery is received by the employee is irrelevant.

In the present case, Harbor Mall transmitted its settlement check on September 16, 2016 and Moranz received the payment on or about September 20, 2016. DTRIC did not transmit its settlement check until October 18, 2016, though Moranz and DTRIC had previously signed a "Stipulation and Settlement Agreement and Order" for the DTRIC settlement on September 1, 2016.

The most sensible date on which to perform Alvarado calculations is the date on which the employee receives the third-party recovery.  As we stated in Alvarado, "this court is bound to construe statutes so as to avoid absurd results."  92 Hawai'i at 517, 993 P.2d at 551.  Therefore, a statutory interpretation that is "rational, sensible[,] and practicable . . . is preferred to one which is unreasonable[,] impracticable . . . inconsisten[t], contradict[ory], and illogical[ ]."  Id. (quoting Keliipuleole v. Wilson, 85 Hawai'i 217, 221-22, 941 P.2d 300, 304-05 (1997)).  It is practicable to direct circuit courts to categorize benefits based on the date of the third-party recovery:  any WC benefits paid before the employee receives the third-party recovery is "paid compensation," any WC benefits paid after is a "calculable future benefit."

This approach is consistent with HRS § 386-8, titled "Liability of third person," as the language therein focuses on the pursuit of third-party recovery.  The legislative history of HRS § 386-8 recognizes that a third-party action can result in "recovery from a third person which benefits both the employee and the [insurer,]" even when the action is prosecuted by the insurer or employee alone.  H. Stand. Comm. Rep. No. 375, in 1973 House Journal, at 912 (emphasis added); see also S. Stand. Comm. Rep. No. 864, in 1973 Senate Journal, at 974 (stating

25

similar).  Thus, HRS § 386-8's provisions ensure that an employee and insurer share proportionally:  (1) liability for the costs and fees associated in bringing the third-party action and (2) recovery from any judgment or settlement.  Given this focus on the third-party action, the relevant timeline is the duration of such third-party action, and the date on which the insurer's Alvarado "share" (i.e., its liability for costs and fees) should be calculated is the date on which the third-party action is brought to an end, by way of either judgment or settlement.

This approach is also consistent with our opinion in Alvarado, which uses an illustrative example to clarify that an employer's "share" is subtracted from "compensation paid," and not from "compensation paid" plus "future [WC] benefit payments."  Alvarado at 520, 993 P.2d at 554.

Because Moranz received the Harbor Mall settlement on or about September 20, 2016, before DTRIC paid the DTRIC settlement for future WC benefits on October 18, 2016, the DTRIC settlement is properly regarded as a "future calculable benefit" under the Alvarado formula.  Defining the DTRIC settlement as "future benefits" rather than "paid compensation" results in DTRIC's "share" of costs and fees exceeding its "paid compensation."  Thus, DTRIC is not, as the ICA held, entitled to a lien in the amount of $99,921.96; Moranz is correct that DTRIC

26

is not entitled to any lien. However, where an employee obtains a third-party settlement, under HRS § 386-8, DTRIC is entitled to reimbursement out of the settlement for its "paid compensation" and is relieved from further compensation payments up to the balance of the settlement after deduction of fees and costs.[18] HRS § 386-8(d), (i).

Given that the parties agree that DTRIC has paid $63,245.41 in past WC benefits, the proper Alvarado calculations are as follows:

> Step 1: Calculate the fraction equal to "paid compensation" ($63,245.41, past WC benefits) plus "calculable future benefits" ($125,816.72, DTRIC settlement), divided by the total amount of the Harbor Mall settlement ($200,000.00)
>
> $63,245.41 + $125,816.72 = $189,062.13 / $200,000.00 = **0.9453**
>
> Step 2: The fraction (0.9453) is then multiplied by the attorney's fees and costs incurred by Moranz in pursuing the action against Harbor Mall ($94,298.29) to determine DTRIC's "share" of the attorney's fees and costs
>
> 0.9453 x $94,298.29 = **$89,140.17**
>
> Step 3: This "share" ($89,140.17) is then subtracted from "paid compensation" ($63,245.41)

---

[18]  See HRS § 386-8(d) ("The entire amount of the settlement after deductions for attorney's fees and costs . . . is subject to the [insurer]'s right of reimbursement for the [insurer]'s compensation payments . . ."); id. § 386-8(i) ("After reimbursement for the [insurer]'s compensation payments, the [insurer] shall be relieved from the obligation to make further compensation payments to the employee under this chapter up to the entire amount of the balance of the settlement or the judgment, if satisfied, as the case may be, after deducting the cost and expenses, including attorneys' fees.").

> to determine the first lien that DTRIC may assert against the Harbor Mall settlement

$$\$63,245.41 - \$89,140.17 = \textbf{-\$25,894.76}$$

Step 3, above, shows that DTRIC's "share" of attorney's fees and costs ($89,140.17) exceeds its "paid compensation" ($63,245.41) by $25,894.76. Because Step 3 of the Alvarado formula yields a negative number due to DTRIC's "share" exceeding its "paid compensation," DTRIC has no lien, but must still contribute its full pro rata "share" of attorney's fees and costs. DTRIC owes its full "share," regardless of the amount it has contributed in "paid compensation" versus "calculable future benefits" in recognition of the fact that "the [employee's] attorney guarded [DTRIC]'s interests . . . when [DTRIC]'s attorney had not been active in litigation." Alvarado at 519, 993 P.2d at 553; see also Takahashi v. Loomis Armored Car Serv., 625 F.2d 314, 316 (9th Cir. 1980) ("[T]he assessment against the employer for its pro rata share of the attorney's fee in the third party tort recovery [is] . . . measured by his total compensation liability under the act, however much the obligation may remain unfulfilled at the time of the third party recovery, rather than the compensation payments then actually made to the work[er].") (quoting Teller v. Major Sales, Inc., 313 A.2d 205, 207 (N.J. 1974)). Thus, DTRIC owes its full original "share" of Moranz's attorney's fees and costs:

> Step 3a:  DTRIC owes its full original "share" ($89,140.17) toward Moranz's attorney's fees and costs ($94,298.29)
>
> $94,298.29 (full amount of Moranz's attorney's fees and costs) - $89,140.17 (DTRIC's "share" of attorney's fees and costs) = **$5,158.12** (Moranz's "share" of attorney's fees and costs)

Moranz owes her "share" of attorney's fees and costs, taken out of the Harbor Mall settlement:

> Step 4a:  Moranz's "share" of attorney's fees and costs ($5,158.12) is deducted from the $200,000.00 Harbor Mall settlement
>
> $200,000.00 - $5,158.12 = **$194,841.88**

However, under HRS § 386-8(d), DTRIC is still entitled to reimbursement of its "paid compensation":

> Step 5a:  DTRIC is entitled to reimbursement of its "paid compensation" ($63,245.41)
>
> $194,841.88 (remainder of Harbor Mall settlement after deduction of Moranz's "share" of attorney's fees and costs) - $63,245.41 (DTRIC's "paid compensation")= **$131,596.47**

Further, under HRS § 386-8(i) and Alvarado, 92 Hawaiʻi at 520 nn.4-5, 993 P.2d at 554 nn.4-5, Moranz must draw "future benefits," including the $125,816.72 DTRIC settlement, from her $131,596.47 recovery.  DTRIC, in turn, is "relieved from the obligation to make further compensation payments to the employee . . . up to the entire amount of the balance of the settlement or the judgment[.]"  HRS § 386-8(i).  Moranz is then

entitled to the $5,779.75 remainder of the $200,000.00 Harbor

Mall settlement:

> Step 6: Moranz must collect "calculable future benefits" (e.g., the $125,816.72 DTRIC settlement) from the remainder of the Harbor Mall settlement
>
> $131,596.47 (remainder of Harbor Mall settlement) – $125,816.72 (DTRIC settlement) = **$5,779.75 net recovery to Moranz from the $200,000.00 Harbor Mall settlement**

Under these calculations, DTRIC pays approximately 95% of

attorney's fees and costs ($89,140.17 "share" of $94,298.29),

and, therefore, has a gross recovery of approximately 95% of the

Harbor Mall settlement, not taking into account its obligation

regarding attorney's fees and costs:  DTRIC recovers a

$63,245.41 reimbursement for its "paid compensation" and is

relieved from paying $125,816.72 in "calculable future benefits"

($189,062.13 of $200,000.00 settlement).  Likewise, Moranz pays

approximately 5% of attorney's fees and costs ($5,158.12 "share"

of $94,298.29) and her gross recovery is approximately 5% of the

settlement ($10,937.87 of $200,000.00 settlement), not taking

into account her obligation regarding attorney's fees and costs.

This outcome is also consistent with the general

principle that the employee should not receive double recovery,

that is, both WC benefits <u>and</u> a third party settlement.  See

First Ins. Co. v. A&B Properties, 126 Hawai'i 406, 418, 271 P.3d

1165, 1177 (2012) ("Under [HRS § 386-8's] framework, and

30

consistent with the general notion of avoiding double recovery for an employee, the employer recovers any money that it advanced as compensation, with the excess going to the employee."); 82 Am. Jur. 2d Workers' Compensation § 13 (2021) ("A substantial part of the legislative purpose and intent of a [WC] statute is to provide for subrogation and prevent double recovery."). Here, it cannot be said that Moranz receives unfair double recovery because she recovers only $5,779.75 (paid by Harbor Mall) in excess of her WC benefits (paid by DTRIC). Indeed, the above calculations--wherein DTRIC recoups its total WC liability of $189,062.13, Harbor Mall pays $200,000.00 in damages, and Moranz receives a net recovery of $5,779.75--is fair to all of the parties to the Harbor Mall action: DTRIC, "the [insurer], who, in a fault sense, is neutral, comes out even;" Harbor Mall, "the third [party,] pays exactly the damages [it] would ordinarily pay[;]" and Moranz, "the employee[,] gets a fuller reimbursement for actual damages sustained than is possible under the compensation system alone." 1 Lex K. Larson, Larson's Workers' Compensation Law § 110.02 (Matthew Bender, Rev. Ed. 2021).

The above method of computation most clearly reflects the language of HRS § 386-8 where an insurer's "share" of attorney's fees and costs exceeds the amount of its "paid compensation."

## V.    CONCLUSION

For the foregoing reasons, the ICA's December 15, 2020 Memorandum Opinion and January 22, 2021 Judgment on Appeal affirming the circuit court's December 5, 2016 Order and December 27, 2016 Judgment are vacated, and the case is remanded to the circuit court for further proceedings consistent with this opinion.

Susan L. Marshall,
for petitioner/plaintiff-
appellant

Ronald M. Shigekane,
for respondent/intervenor-
appellee

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins

