**<u>FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER</u>**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000491
26-FEB-2025
06:23 AM
Dkt. 51 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
BRYSON JAY KELIIKU POLOLEI NAGAMINE, Defendant-Appellant

NO. CAAP-21-0000491

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5CPC-21-0000005)

FEBRUARY 26, 2025

WADSWORTH, PRESIDING JUDGE, NAKASONE AND MCCULLEN, JJ.

OPINION OF THE COURT BY NAKASONE, J.

The sole challenge in this appeal is to the imposition of an "internet crimes against children fee" (**ICAC fee**) under Hawaii Revised Statutes (**HRS**) § 846F-3[1] for the conviction of an offense that is not included within the definition of "[i]nternet crimes against children" under HRS § 846F-2.[2]

---

[1]     HRS § 846F-3 (2014 & 2016 Supp.), entitled "Internet crimes against children fee," provides:

> (a) The court shall order every defendant to pay an internet crimes against children fee of up to $100 for each felony or misdemeanor conviction; provided that no fee shall be ordered when the court determines that the defendant is unable to pay the fee.
>
> (b) When a defendant is also ordered to pay a fine, make restitution, pay a crime victim compensation fee, or pay other fees in addition to the internet crimes against children fee, payments by the defendant shall be made in the order of priority established under section 706-651.
>
> (c) The defendant shall pay the internet crimes against children fee to the clerk of the court. The fee shall be deposited with the director of finance who shall transmit the fee to the internet crimes against children special fund pursuant to section 846F-4.

(Emphasis added.)

[2]     HRS § 846F-2 (2014), entitled "Definitions," defines "Internet crimes against children" as certain specified offenses (**internet crimes against children offenses** or **ICAC offenses**), as follows:

> As used in this chapter, unless the context otherwise requires:
>
> "Internet crimes against children" means promoting child abuse in the first degree under section 707-750, promoting child abuse in the second degree under section 707-751, promoting child abuse in the third degree under section 707-752, electronic enticement of a child in the first degree under section 707-756, electronic enticement of a child in the second degree under section 707-757, indecent electronic display to a child under section 707-759, or promoting pornography for minors under section 712-1215.

(Emphases added.)

Defendant-Appellant Bryson Jay Keliiku Pololei Nagamine (**Nagamine**) appeals from the August 11, 2021 Judgment of Conviction and Sentence, entered by the Circuit Court of the Fifth Circuit (**Circuit Court**),[3] and only challenges the imposition of the ICAC fee.

We hold that the ICAC fee applies only to ICAC offenses, and should not have been imposed for the Habitually Operating a Vehicle Under the Influence of an Intoxicant (**Habitual OVUII**) conviction in this case. Accordingly, we reverse the imposition of the $100.00 ICAC fee.

## I. BACKGROUND

On January 7, 2021, Nagamine was charged with Habitual OVUII, in violation of HRS § 291E-61.5(a)(1)(2)(A); operating a vehicle after his license was suspended or revoked for OVUII, in violation of HRS § 291E-62(a)(1) and/or (2); and Inattention to Driving, in violation of HRS § 291-12. On May 19, 2021, Nagamine pled no contest to Habitual OVUII, and the remaining counts were dismissed with prejudice.

At the August 11, 2021 sentencing hearing, the Circuit Court sentenced Nagamine to five years of probation with six months in jail, and ordered Nagamine to pay a $2,000.00 fine and other fees, including the ICAC fee at issue in this appeal. Nagamine objected to the $100.00 ICAC fee based on HRS § 37—52.3.[4] Nagamine timely appealed.

---

[3]     The Honorable Kathleen N.A. Watanabe presided.

[4]     HRS § 37—52.3 (2009 & 2016 Supp.), entitled "Criteria for the establishment and continuance of special funds," (**special funds statute**) sets forth criteria for special funds and specifies that the program receiving the special funds must have a "clear link" to the revenue source, as follows:

> Special funds shall be established only pursuant to an act of the legislature. The legislature, in establishing or

## II. STANDARDS OF REVIEW

The interpretation of a statute is a question of law reviewable de novo. State v. Borge, 152 Hawai'i 458, 464, 526 P.3d 435, 441 (2023). Interpretation of a statute is governed by the following principles:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
>
> When there is ambiguity in a statute, "the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law.

Barker v. Young, 153 Hawai'i 144, 148, 528 P.3d 217, 221 (2023) (citation omitted).

---

> reviewing a special fund to determine whether it should be continued, shall ensure that the special fund:
>
> . . . .
>
> (2) Reflects a clear nexus between the benefits sought and charges made upon the program users or beneficiaries or a clear link between the program and the sources of revenue, as opposed to serving primarily as a means to provide the program or users with an automatic means of support that is removed from the normal budget and appropriation process[.]

(Emphases added.)

4

An alleged sentencing error is reviewed for abuse of discretion.  State v. Barnes, 145 Hawaiʻi 213, 217, 450 P.3d 743, 747 (2019).

### III. DISCUSSION

On appeal, Nagamine argues that:  (1) the ICAC fee under HRS § 846F-3 "may only be imposed where a convicted defendant has committed one of the Internet Crimes Against Children defined in HRS § 846[F]-2";[5] and (2) HRS § 37-52.3 prohibits the imposition of the ICAC fee for an offense such as Habitual OVUII with no "clear link" between the ICAC special fund and the ICAC fee.

**A. The ICAC fee applies to every defendant convicted of an ICAC offense defined under HRS § 846F-2, not to all defendants convicted of any criminal offense.**

In response to Nagamine's contention that the ICAC fee "may only be imposed" where a convicted defendant has committed an ICAC offense defined in HRS § 846F-2, the State argues "the plain language of HRS §[]846F-3(a) mandates imposition of the ICAC fee for every misdemeanor and felony offense that a defendant is convicted of (except if the defendant does not have the ability to pay)"; and "where a statute limits imposition of a fee to specific types of convictions, the statutes clearly indicate the types of convictions to which the fee applies." The State asserts that because "HRS §[]846F-3(a) specifies that the ICAC fee is imposed 'for each felony and misdemeanor conviction,'" this "indicates that the fee applies to all such convictions, rather than solely convictions for ICAC offenses."

---

[5]    The parties were permitted to submit an optional supplemental brief addressing "whether or how the definition of an '[i]nternet crimes against children' . . . offense set forth in HRS § 846F-2 applies to the imposition of an ICAC fee under HRS § 846F-3."  Both parties did so.

The State claims that the ICAC definition in HRS § 846F-2 "limits the kinds of training, investigations, prosecutions, and initiatives that ICAC funds may be used for; it does *not* limit the types of defendants upon whom the ICAC fee must be imposed."

As explained below, we conclude that the ICAC fee applies only to ICAC offenses. This conclusion is based on the plain language of HRS Chapter 846F, its legislative history, and the requirements that the ICAC fees and ICAC special fund must comply with in HRS § 37-52.3.

1. **The plain language defining an ICAC offense under HRS § 846F-2 limits the imposition of the HRS § 846F-3 ICAC fee to the enumerated ICAC offenses.**

HRS Chapter 846F, entitled "Internet Crimes Against Children," created the ICAC fee in HRS § 846F-3 and established the ICAC special fund to assist in the investigation and prosecution of internet crimes against children. The plain language of HRS § 846F-2 states that the term "[i]nternet crimes against children" "[a]s used in this chapter," means the offenses of "promoting child abuse," "electronic enticement of a child," "indecent electronic display to a child," and "promoting pornography for minors." See Borge, 152 Hawaiʻi at 464, 526 P.3d at 441 ("[W]here the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning." (citation omitted)).

HRS § 846F-3(a) states:

> The court shall order every defendant to pay an internet crimes against children fee of up to $100 for each felony or misdemeanor conviction; provided that no fee shall be ordered when the court determines that the defendant is unable to pay the fee.

6

(Emphasis added.)  The ICAC definition under HRS § 846F-2 applies wherever the ICAC term is "used in this chapter[.]" HRS § 846F-3 requires the imposition of the **_internet crimes against children fee_** on "every defendant" for "each felony or misdemeanor conviction[.]"  (Emphasis added.)  Notably, HRS § 846F-3 applies the fee only to felonies and misdemeanors and not to all grades of criminal offenses, which would ordinarily include petty misdemeanors.  See HRS § 701-107(1) (2014) ("Crimes are of three grades:  felonies, misdemeanors, and petty misdemeanors"); cf. HRS §§ 706-605(6) and 351-62.6 (imposing a crime victim compensation fee "upon every person convicted of a criminal offense" and "upon every defendant who has been convicted or who has entered a plea" in differing amounts for felonies, misdemeanors, and petty misdemeanors) (emphasis added).  The limitation of the ICAC fee specifically to a "felony or misdemeanor" conviction is logically consistent with the grades of the ICAC offenses set forth in HRS § 846F-2, which include only felonies and misdemeanors, and not petty misdemeanors.[6]  See Moranz v. Harbor Mall, LLC, 150 Hawaiʻi 387, 398, 502 P.3d 488, 499 (2022) (statutory interpretation that is "inconsistent, contradictory, and illogical" should be avoided (cleaned up)).  Applying the statutory interpretation urged by the State -- that "felony or misdemeanor" in HRS § 846F-3 means all criminal offenses -- would also render the specific language

---

[6]     Each ICAC offense listed in HRS § 846F-2 is a felony or a misdemeanor, as follows:  the Class A felony offense of first-degree promoting child abuse; the Class B felony offense of second-degree promoting child abuse; the Class C felony offense of third-degree promoting child abuse; the Class B felony of electronic enticement of a child in the first degree; the Class C felony of electronic enticement of a child in the second degree; the misdemeanor of indecent electronic display to a child; and the Class C felony of promoting pornography for minors.

of "felony or misdemeanor" a nullity, a result we must avoid. See Jijun Yin v. Aguiar, 146 Hawai'i 254, 265, 463 P.3d 911, 922 (2020) (noting the "rules of statutory construction require rejection of an interpretation that renders any part of the statutory language a nullity" (citation omitted)). Further, a pari materia construction of these related statutes -- HRS § 846F-2's definition of ICAC offenses and HRS § 846F-3's imposition of ICAC fees -- compels the same conclusion that the ICAC fees apply only to ICAC offenses. See HRS § 1-16.

> **2. The legislative history also confirms the ICAC fee was intended to apply only to ICAC offenses.**

Assuming arguendo the ICAC fee statute HRS § 846F-3 is ambiguous, the legislative history of HRS Chapter 846F reflects that the ICAC fee was intended to apply only to ICAC offenses. See Barker, 153 Hawai'i at 148, 528 P.3d at 221. HRS Chapter 846F was enacted as Act 115 in 2014, as a new chapter known as "Alicia's Law," in memory of a victim of an internet predator. 2014 Haw. Sess. Laws Act 115, § 1 at 325. Act 115 states: "The purpose of this Act is to combat internet crimes against children by establishing an internet crimes against children fee and a special fund to assist law enforcement to investigate and prosecute internet crimes against children and groups working directly to fight internet crimes against children." Id. The legislative history reflects that the initial bill, Senate Bill 702, went through multiple committees and readings in the Hawai'i State Senate and House of Representatives, until it passed Final Reading by the Conference Committee on April 25, 2014.[7]

---

[7] See S. Stand. Comm. Rep. No. 388, in 2013 Senate Journal, at 1047; S. Stand. Comm. Rep. No. 2818, in 2014 Senate Journal, at 1134; H. Stand. Comm. Rep. No. 956-14, in 2014 House Journal, at 1217-18; H. Stand. Comm. Rep. No. 1104-14, in 2014 House Journal, at 1269; H. Stand. Comm. Rep.

The final Conference Committee Report No. 88-14 specifically contained language clarifying that the proposed ICAC fee would be imposed for felony or misdemeanor convictions of "internet crimes against children," as follows:

> The purpose of this measure is to combat internet crimes against children by:
>
> (1) Establishing an internet crimes against children fee, which shall be assessed against a defendant for each <u>felony or misdemeanor conviction of internet crimes against children</u>;
>
> (2) Establishing an internet crimes against children special fund intended to enable law enforcement to investigate and prosecute such crimes and to assist groups working directly to fight such crimes; and
>
> (3) Making an appropriation to the internet crimes against children special fund and from the special fund for training and equipment, investigation and prosecution of internet crimes against children, and combatting such crimes.
>
> Your Committee on Conference finds that in 2008, USA Today reported that the Internet Crimes Against Children Task Forces had identified 2,297 unique computers in Hawaii trading sadistic images of infants and toddlers being tied up, tortured, and raped. Due to limited funds, equipment, and training, only a very small percentage of investigative leads related to such crimes are examined every month. Your Committee on Conference finds that imposing a fee on every defendant <u>convicted of a felony or misdemeanor for internet crimes against children</u> will help to establish funding to enhance the investigation and prosecution of such crimes and protect Hawaii's children.
>
> Your Committee on Conference has amended this measure by:
>
> (1) Inserting an internet crimes against children fee amount of up to $100 for each <u>felony or misdemeanor conviction for internet crimes against children</u>;
>
> (2) Inserting an appropriation amount of $62,500 to be deposited from general revenues into the internet crimes against children special fund and from the special fund for training and equipment, investigation and prosecution of

_____

No. 1548-14, in 2014 House Journal, at 1414; Conf. Comm. Rep. No. 88-14, in 2014 Senate Journal, at 726.

> internet crimes against children, and combatting such crimes; and
>
> (3) Inserting an effective date of July 1, 2014.

Conf. Comm. Rep. No. 88-14, in 2014 Senate Journal, at 726 (emphases added). As shown above, the legislature repeatedly and consistently specified that the ICAC fee would apply to felony or misdemeanor convictions "*for internet crimes against children*" or "*of internet crimes against children*[.]" Id. (emphases added). Thus, the legislative history confirms the ICAC fee was intended to apply only to ICAC offenses defined under HRS § 846F-2. See Barker, 153 Hawaiʻi at 148, 528 P.3d at 221.

> **3. Limiting the imposition of the ICAC fee to ICAC offenses is consistent with HRS § 37-52.3's requirement of "a clear link" between the ICAC special fund and its revenue source.**

Nagamine argues that the imposition of the ICAC fee was error because the special funds statute, HRS § 37—52.3, requires a "clear link" between the special fund and its revenue source; and no "link" or "nexus" exists between the ICAC fee and his Habitual OVUII conviction. In its Answering Brief, the State does not specifically counter Nagamine's argument, and argues that ICAC fees were upheld as constitutional fines under State v. Adcock, 148 Hawaiʻi 308, 473 P.3d 769 (App. 2020).[8]

---

[8]     In Adcock, 148 Hawaiʻi at 321, 473 P.3d at 782 (brackets omitted), the defendant opposed the imposition of the ICAC fee for his first-degree terroristic threatening offenses because "none of his offenses are in any way related to internet crimes against children." This court "read this complaint as an argument that the statute violates his right to substantive due because there is no rational basis for the imposition of the ICAC fee," and rejected it, upholding the ICAC fees in that case. Id. The defendant in Adcock did not challenge, and this court did not address, the imposition of the ICAC fee based on the ICAC definition in HRS § 846F-2.

The special funds statute, HRS § 37-52.3, establishes the "[c]riteria for the establishment and continuance of special funds." HRS § 37—52.3 requires "a clear link between the program and the sources of revenue[.]" The legislative history of this statute indicates that "because special and revolving funds should only be used for their specified purpose and cannot be used for other programs, efforts must be made to ensure that these funds are the most appropriate funding mechanism for the programs they support." H. Stand. Comm. Rep. No. 601, in 2013 House Journal, at 1122-23.

In this case, the program subject to HRS § 37-52.3 is the ICAC special fund created by HRS § 846F-4, which states:

> (a) There is established in the state treasury <u>the internet crimes against children special fund, into which shall be deposited</u>:
>
> > (1) <u>All fees collected pursuant to section 846F-3</u>;
> >
> > (2) Moneys appropriated by the legislature to the fund;
> >
> > (3) Other grants and gifts made to the fund; and
> >
> > (4) Any income and capital gains earned by the fund.
>
> (b) Moneys in the internet crimes against children special fund shall be expended by the department of the attorney general for the following purposes:
>
> > (1) To provide training and equipment for local law enforcement agencies to use in investigating and prosecuting internet crimes against children, including funding to increase the forensic capacity of digital evidence;
> >
> > (2) To enable law enforcement to investigate and prosecute internet crimes against children; and
> >
> > (3) To assist groups working directly to combat internet crimes against children.

(Emphases added.)

The ICAC special fund is funded in part by "[a]ll fees collected pursuant to section 846F-3[,]" and HRS § 846F-3(c), in turn, provides that the ICAC fee "shall be deposited with the director of finance who shall transmit the fee to the [ICAC] special fund pursuant to section 846F-4." Thus, as a special fund, the ICAC special fund is subject to HRS § 37-52.3's requirement of maintaining "a clear link" between the ICAC special fund and its revenue source -- the ICAC fees collected under HRS §§ 846F-3 and -4.

The term "clear link" is not defined in HRS § 37—52.3. When a term is not defined by statute, "we determine its meaning by looking to its 'ordinary and familiar signification' and 'general and popular use[,]'" and we may "also consider 'legal or other well accepted dictionaries.'" State v. Kaeo, 151 Hawaiʻi 329, 334, 512 P.3d 154, 159 (2021) (citation omitted). The word "clear" is defined as "free from obscurity or ambiguity[,] easily understood[,] and unmistakable." Clear, Merriam-Webster, https://www.merriam-webster.com/dictionary/ clear (last visited Feb. 21, 2025). "Link" is defined as "a connecting element or factor." Link, Merriam-Webster, https://www.merriam-webster.com/dictionary/link (last visited Feb. 21, 2025). Thus, "clear link" means an easily understood connection between two elements.

Here, the ICAC fee was imposed on a Habitual OVUII conviction, which is not an ICAC offense. There is no "clear link" or easily understood connection between the ICAC special fund and an ICAC fee collected from a defendant convicted of Habitual OVUII. Habitual OVUII does not involve harm to children via electronic means that are characteristic of the ICAC offenses. Thus, the imposition of the ICAC fee in this

12

case did not comply with the "clear link" requirement of HRS § 37-52.3.

Accordingly, we conclude the Circuit Court acted outside its discretion in imposing the ICAC fee on Nagamine's Habitual OVUII conviction in this case.  See Barnes, 145 Hawaiʻi at 217, 450 P.3d at 747.

## IV.  CONCLUSION

For these reasons, we reverse the ICAC fee imposed by the Circuit Court of the Fifth Circuit's August 11, 2021 Judgment of Conviction and Sentence.  We affirm the remainder of Nagamine's sentence.


On the briefs:

Matthew Mannisto,
for Defendant-Appellant.

Tracy Murakami,
Deputy Prosecuting Attorney,
County of Kauaʻi
for Plaintiff-Appellee.

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge